**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN MANTEL,

               Plaintiff

v.

GANNET COMPANY, INC., HEARST
STATIONS, INC., HEARST NEWSPAPERS
LLC, TOSHIBA AMERICA
INFORMATION SYSTEMS, INC.,
LENOVO (UNITED STATES) INC.,
GANNETT SATELLITE INFORMATION
NETWORK, LLC, VERIZON SERVICES
CORP., TEGNA, INC., MICROSOFT
CORPORATION, AOL INC., AND
ZAZOOM, LLC

               Defendants

Case No. 16-cv-05277(AJN)

ECF CASE

**DEFENDANTS' MEMORANDUM OF LAW (I) IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (II) OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
Edward H. Rosenthal
Andrew J. Ungberg
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax: (212) 593-9175

*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

STANDARD OF REVIEW ...................................................................................................... 5

ARGUMENT .......................................................................................................................... 6

    I.      PLAINTIFF SHOULD BE PRECLUDED FROM RELYING ON EVIDENCE THAT HE FAILED TO DISCLOSE OR PRODUCE IN FACT DISCOVERY ....................... 6

        A.  Plaintiff has Violated Federal Rule 26(a) and (e) By Failing to Participate in Fact Discovery ................................................................................................................. 7

        B.  Preclusion of Plaintiff's Evidence is Warranted under Rule 37(c) and the Court's Inherent Power ........................................................................................................ 8

    II.     PLAINITFF'S MOTION SHOULD BE DENIED AND DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM ...................................................................................... 13

        A.  Plaintiff's Copyright Infringement Claims Must Be Dismissed Because He Cannot Show that the Photograph is the Subject of a Valid Copyright Registration. ............. 13

        B.  Defendants' Use of the Photograph in Conjunction with News Reporting is a Protected Fair Use under Section 107 of the Copyright Act. ................................... 16

    III.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DMCA SECTION 1202 CLAIM .................................................................................. 25

        A.  Plaintiff Cannot Show that CMI was Removed or Altered, or that Defendants had Intent to Facilitate or Conceal Copyright Infringement............................................. 26

CONCLUSION ................................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Agence France Presse v. Morel*,
   293 F.R.D. 682 (S.D.N.Y. 2013) ................................................................................10, 24

*Banxcorp* v. *Costco Wholesale Corp.*,
   723 F. Supp. 2d 596 (S.D.N.Y. 2010).....................................................................................24

*Baraban v. Time Warner, Inc.*,
   No. 99 Civ. 1569(JSM), 2000 WL 358375 (S.D.N.Y. Apr. 6, 2000).....................................20

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006)....................................................................15, 17, 20, 21

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006).....................................................................................................18

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).................................................................................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...................................................................................................................4

*Consumers Union of United States, Inc. v. Gen. Signal Corp.*,
   724 F.2d 1044 (2d Cir. 1983)..................................................................................................20

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006).............................................................................................10, 11

*Ebewo v. Martinez*,
   309 F. Supp. 2d 600 (S.D.N.Y. 2004)..................................................................................7, 9

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
   756 F. Supp. 2d 1352 (N.D. Fl. 2010) ...................................................................................25

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
   471 U.S. 539 (1985).................................................................................................................18

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005)............................................................................................4, 5, 19

*Kienitz v. Sconnie Nation LLC*,
   766 F. 3d 756 (7th Cir. 2014) .................................................................................................21

*Kunstler v. City of New York*,
   242 F.R.D. 261 (S.D.N.Y.2007) ..............................................................................................8

*Monge v. Maya Magazines, Inc.*,
   688 F. 3d 1164 (9th Cir. 2012) ...................................................................................21

*Monster Communications, Inc. v. Turner Broadcasting*,
   935 F. Supp. 490 (S.D.N.Y. 1996) ............................................................................20

*Nunez v. Caribbean Int'l News Corp.*,
   235 F.3d 18 (1st Cir. 2000) .......................................................................................19

*NXIVM Corp. v. Ross Inst.*,
   364 F.3d 471 (2d Cir. 2004)................................................................................15, 16

*Point Productions A.G. v. Sony Music Entm'tt*,
   No. 93-civ-4001(NRB), 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) .............11, 22

*Ritchie Risk-Linked Strategies Trading, LTD v. Coventry First LLC*,
   280 F.R.D. 147 (S.D.N.Y. 2012) .................................................................................9

*Rule v. Brine, Inc.*,
   85 F.3d 1002 (2d Cir. 1996).......................................................................................14

*Samuels v. Mockry*,
   77 F.3d 34 (2d Cir. 1996).............................................................................................4

*Sheldon Abend Revocable Trust v. Spielberg*,
   748 F. Supp. 2d 200 (S.D.N.Y. 2010).......................................................................12

*Swatch Group Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014)..........................................................................16, 17, 18, 21

*Thron v. HarperCollins Publishers, Inc.*,
   No. 01 Civ 5437(JSR), 2002 WL 1733640 (S.D.N.Y. Jul. 26, 2002) ....................25

*Ward v. National Geographic Society*,
   208 F. Supp. 2d 429 (S.D.N.Y. 2002).......................................................................25

*William Wade Waller Co. v. Nextard Broadcasting, Inc.*,
   4-10-cv-00764 GTE, 2011 WL 2648584 (E.D. Ak. Jul 6, 2011) ...........................25

*Winn v. Associated Press*,
   903 F. Supp. 575 (S.D.N.Y. 1995), aff'd, 104 F.3d 350 (2d Cir. 1996)....................8

*Zalewski v. Cicero Builder Dev., Inc.*,
   754 F.3d 95 (2d Cir. 2014).........................................................................................24

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
   No. 16 Civ. 6110 (AKH), 2017 WL 2829517 (S.D.N.Y. June 29, 2017) ...............12

**Statutes**

17 U.S.C. § 410(c) .................................................................................................................13

17 U.S.C. § 411(a) ............................................................................................................12, 13

17 U.S.C. § 1202 .................................................................................................2, 11, 24, 26

17 U.S.C. §1202(b) ...............................................................................................................24

17 U.S.C. § 1202(c)(1)–(8) .................................................................................................24

Copyright Act .................................................................................................................14, 16

DMCA .........................................................................................................................24, 25, 26

**Other Authorities**

Fed. R. Civ. P. 26(a)(1)(A) ...................................................................................................5

Fed. R. Civ. P. 26(e) ..............................................................................................................7

Fed. R. Civ. P. 26(e)(1) .........................................................................................................7

Fed. R. Civ. P. 26(e)(1)(A) ...................................................................................................6

Fed. R. Civ. P. 37(c)(1) .........................................................................................................7

Federal Rule 26(a) ...........................................................................................................5, 6, 7

Federal Rule 26(e) ..............................................................................................................5, 6

Federal Rules of Civil Procedure Rule 56(a) ...............................................................1, 4

*New York Post* ..................................................................................................6, 16, 19, 23

*New York Post* article ...................................................................................2, 17, 18, 25

*New York Post, Daily Mail* .................................................................................................3

Rule 37 .................................................................................................................................9, 10

Defendants Gannet Company, Inc., Hearst Stations, Inc., Hearst Newspapers LLC, Toshiba America Information Systems, Inc., Lenovo (United States) Inc., Gannett Satellite Information Network, LLC, Verizon Services Corp., Tegna, Inc., Microsoft Corporation, AOL Inc., and Zazoom, LLC ("Zazoom" and together with all other defendants, "Defendants") submit this Memorandum of Law pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (the "Federal Rules"): (i) in support of their Motion for Summary Judgment [Dkt. No. 60] to dismiss all claims asserted in the First Amended Complaint of Plaintiff John Mantel ("Plaintiff" or "Mantel"); and (ii) in opposition to Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 61] (the "Motion").

## PRELIMINARY STATEMENT

In July 2016, Plaintiff John Mantel, a local photographer, sued Defendant Zazoom LLC, a video content production company; he alleges that Zazoom and its content-distribution partners committed copyright infringement by using one of his photos without authorization and that Defendants wrongfully removed his "copyright management information" (a simple gutter credit) in violation of 17 U.S.C. § 1202. Defendants answered, denying that they infringed or violated § 1202, and assert that their use of the photo was a fair use under Section 107 of the Copyright Act.

In the five months between the parties' initial conference and the end of fact discovery in this action, Plaintiff all but abandoned this case: he failed to produce any documents whatsoever, including in response to Defendant's discovery requests; he never disclosed a computation of his damages or provided evidence to support his claims; and he failed to supplement any of his disclosures or discovery requests. In short, Mantel produced no evidence to support the essential elements of his copyright and DMCA § 1202 claim.

1

Now, however, Plaintiff moves for partial summary judgment on the basis of documents that he never produced or disclosed in fact discovery. This is blatant litigation by ambush. Plaintiff's motion must be denied as a matter of law: his prior negligence or misconduct warrants preclusion of all evidence that he failed to produce in the course of fact discovery. And, without that evidence, Plaintiff cannot prove the essential elements of claims or meet his evidentiary burden to survive Defendants' motion for summary judgment.

Additionally, Defendants are entitled to summary judgment dismissing Plaintiff's copyright and DMCA § 1202 claims in their entirety. Defendants' use of the photograph at issue in their video was news reporting and a protected fair use under Section 107 of the Copyright Act. Moreover, there is no evidence that Defendants removed any "copyright management information" — the gutter credit appears in the video at issue here — or that they acted with the requisite intent to promote or conceal copyright infringement as required under the statute.

Accordingly, Plaintiff's motion should be denied, the Court should grant Defendants' motion for summary judgment and dismiss Plaintiff's case in its entirety.

## STATEMENT OF FACTS

### A.      Defendants' Business and Background

Defendant Zazoom LLC is a creator, producer and multi-platform distributor of video intended for internet audiences. Declaration of Steve Charlier dated September 22, 2017 (the "Charlier Decl.") ¶ 2. Zazoom produces video content under a number of different video brands, including Buzz60, Veuer, and TPSY. *Id.* Zazoom's videos cover a wide array of topics such as news, current events and politics, health and beauty, fashion, "DIY" projects, entertainment news, and human-interest stories. *Id.* Zazoom distributes its video content on YouTube and via

a network of partner-operated websites.  *Id.* ¶3.  Each of the other defendants in this action are

entities that own or operate a website that is part of Zazoom's partner network.[1]  *Id.*

## B.      The Zazoom Video

In early May 2016, the news media in New York reported on a local charity event:

originally slated to be a high-end wedding reception, it was reorganized as a lunch for needy kids

and families by the bride-to-be, Ms. Sun, after her engagement was abruptly called off.  *Id.* ¶ 4

and Exhibit [NY Post, Newsday, CBS].  Portrayed as a human-interest story, several local media

outlets ran coverage of the event, including the *New York Post*, *Newsday*, and the local CBS

affiliate.  *Id.* ¶ 4, Ex. A, B, C.  On May 8, 2016, Zazoom created a short news video about Ms.

Sun's charity lunch, which combined excerpts from local coverage together with its own original

commentary on the story, and released the video under its in-house Buzz 60 brand (the "Video").

*Id.* ¶ 5., Ex. D.  The Video was then distributed through Zazoom's content network and

displayed on websites operated by the other defendants in this action.  *Id.* ¶ 6.  The video

contained an excerpt from a *New York Post* article about the lunch, including a photo of Ms. Sun

and several children (the "Photograph"), which is at issue in this case.  *Id*. Ex. B.  Defendants'

use of the Photograph was limited to the Video.  *Id* ¶ 6.

## C.      Procedural History

On July 4, 2016, without first attempting to contact Zazoom to seek to resolve this matter,

Mantel filed this action, alleging infringement of the Photograph and wrongful removal of his

"copyright management information" ("CMI") in violation of the 17 U.S.C. § 1202 (the

"DMCA").  Declaration of Andrew J. Ungberg, dated September 22, 2017 (the "Ungberg Decl.")

¶ 2; Charlier Decl. ¶ 7.  Promptly after receiving the complaint, Zazoom removed the Video from

---

[1] Zazoom stands as indemnitor to its partners, including all other defendants in this action and is therefore
coordinating the defense of this action for all Defendants.

its network and confirmed that its content partners had done likewise.  Charlier Decl. ¶ 8.  The
Video has remained off of Zazoom's distribution network throughout the duration of this
litigation.  *Id.*

On September 12, 2016, Mantel filed a First Amended Complaint (the "Complaint"),
which was in all material respects identical to his original complaint.  Ungberg Decl. ¶ 2, Ex. A.
On September 26, 2017, Defendants filed their Answer and Affirmative Defenses.  *Id.* ¶ 3, Ex. B.

On January 27, 2017, Defendants served on their First Set of Requests for the Production
of Documents ("RFP") and First Set of Interrogatories (the "Interrogatories") on Mantel.  *Id.* ¶ 4.
On February 13, 2017, Mantel served on Defendants his initial disclosures.  *Id.* ¶ 5, Ex. E.

On March 14, 2017, Mantel served on Defendants his Responses and Objections to
Defendants' RFP and Interrogatories.  *Id.* ¶ 4, Ex. C, D.  Despite agreeing to do so in response to
the RFP and Interrogatories, Mantel failed to produce any documents to Defendants before the
close of fact discovery on May 28, 2017.  *Id.* ¶¶ 7-10.  Mantel did not produce any documents
relating to any of: (i) his copyright registration, application for copyright registration, or
communications with the Copyright Office relating to the Photograph; (ii) his licensing
agreements with the *New York Post*, *Daily Mail*, or any other third party; or (iii) his
compensation or licensing fees received from the *New York Post*, *Daily Mail*, or any other third
party.  *Id* ¶¶ 8-10.

In early March 2017, Defendants served their responses and objections to Mantel's
document requests and interrogatories.  *Id.* ¶ 6.  Defendants produced responsive documents to
Mantel on April 7, 2017.  *Id.*

Following referral to Magistrate Judge Parker, on June 28, 2017, the parties conducted a
half-day settlement conference but were unable to resolve the case.  *Id.* ¶ 11.  Mantel did not

produce any documents, informally or otherwise, in connection with the settlement conference. *Id.*

On July 14, 2017, the parties appeared before this Court for an interim pretrial conference. *Id.* ¶ 12, Ex. F. During the conference, Mantel sought leave of the Court to introduce evidence that would allegedly substantiate his claim for actual damages and lost licensing revenue. *See Id.*, Ex. F at 3:25-4:14. The Court denied this request on the grounds that Mantel had failed to produce any of this information during discovery. *See Id* at 7:3-6.

## STANDARD OF REVIEW

Summary judgment must be granted if the moving party shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . ." *Id.* at 323–24. For issues where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party makes such a showing, the "non-movant may defeat summary judgment *only by producing specific facts* showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996) (emphasis added); *see also Celotex*, 477 U.S. at 322-23. To defeat a motion for summary judgment, the non-moving plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005). Rather, the

plaintiff must put forward "evidence on which the jury could *reasonably* find" in his favor.  *Id.* at 554 (emphasis added).

## ARGUMENT

### I.   PLAINTIFF SHOULD BE PRECLUDED FROM RELYING ON EVIDENCE THAT HE FAILED TO DISCLOSE OR PRODUCE IN FACT DISCOVERY

In the five months between the parties' initial conference on January 27, 2017 and the close of fact discovery on May 28, 2017, Mantel all but abandoned this case.  During this period, he simply chose not to participate in fact discovery: he failed to produce any documents whatsoever, including in response to Defendants' discovery requests, *see* Ungberg Decl. ¶¶ 7-10; he never disclosed a computation of his damages claims or provided Defendants with evidence supporting those claims, i*d.* ¶ 5, Ex. E; and never supplemented his initial disclosures or discovery responses as required under the Federal Rules, *id.* ¶ 7.  As a result, as of the close of fact discovery in this case, Mantel had no produced no evidence to support his ownership or registration of a valid copyright or claims for damages, both essential elements of his copyright claim, or any of the elements of his DMCA § 1202 claim.  His claims fail as a matter of law.

Now, months after the close of fact discovery, Mantel has moved for partial summary judgment on basis of documents and information that were never produced or disclosed in the course of fact discovery.  This is textbook, prejudicial litigation by ambush and it warrants preclusion of all evidence that Mantel failed to produce in discovery.  And, without that evidence, Mantel cannot prove claims support his Motion for partial summary judgment or meet the evidentiary burden required to survive Defendants' motion for summary judgment.  Accordingly, the Court should deny Mantel's motion in its entirety, and enter summary judgment in Defendants' favor.

**A.     Plaintiff has Violated Federal Rule 26(a) and (e) By Failing to Participate in Fact Discovery**

Federal Rule 26(a) provides that, among other information, a party must provide the other parties with "a computation of each category of damages claimed by the disclosing party" and to make available "the documents or other evidentiary material . . . on which each computation is based." *See* Fed. R. Civ. P. 26(a)(1)(A) (iii).  Additionally, under Federal Rule 26(e), a party has an affirmative duty to supplement its initial disclosures or discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect" and that the "additional . . . information has not otherwise been made known to the other parties."  *See* Fed. R. Civ. P. 26(e)(1)(A).  By failing to participate in discovery, Mantel has violated each of these obligations.

<u>First</u>, Mantel's initial disclosures violate Federal Rule 26(a) because they do not contain a computation of Mantel's damages.  Instead, Mantel's disclosures dodged this obligation, asserting that he "has not yet obtained discovery of Defendants' financial, sales and other relevant records, [and] cannot make a reasonable estimate of the damages sustained or infringing profits he may recover as a result of Defendants' actions."  Ungberg Decl. ¶ 5, Ex. E at 3. Mantel served his initial disclosures in this action on February 13, 2017, *see id*; he therefore had more than three months to supplement his damages calculations with the benefit of discovery obtained from Defendants.  He failed to do so, or to produce any documents to substantiate or support his claim for damages.  Ungberg Decl. ¶ 7-10.

<u>Second</u>, Mantel violated Federal Rule 26(e) by failing to produce documents responsive to Defendants' requests after representing in his discovery responses that he would do so.  At the outset of discovery in this action, on January 27, 2017, Defendants served their RFP and

interrogatories, which sought several categories of information and documents central to the

issues in this case, including:

- Documents relating to Mantel's claim to have registered the Photograph as part of the group registration under VA 2-007-059 (the "059 Registration"), including deposit copies and communications with the U.S. Copyright Office, *see* Ungberg Decl. Ex. C at Request 1, 2.;

- Documents relating to Mantel's licensing history and compensation derived from the exploitation of the Photograph, *see* Ungberg Decl.  Ex. C at Requests 4, 5, 9, and 10; and

- The identity and contact information of third-party individuals, including at the *New York Post*, with knowledge or evidence relating to the licensing of the Photograph. See Ungberg Decl. Ex. D at Interrogatory No. 4.

On March 14, 2017, Mantel served responses to these requests stating either that he would "use

commercially reasonable efforts to produce responsive, non-privileged documents" or

represented that he had no such documents in his possession, custody or control.  *See* Ungberg

Decl. Ex. C at Response to Requests No. 1, 2, 4, 5, 9 and 10; *see also* Ungberg Decl. Ex. D at

Response to Interrogatory No. 4 (asserting that the production of responsive documents would

serve in lieu of a written response).  When Mantel failed to follow through on the representations

contained in each of his discovery responses, these responses became "incomplete or incorrect"

within the meaning of Fed. R. Civ. P. 26(e) and gave rise to a duty to correct the response by

either (i) supplementing the response to indicate that Mantel had no documents within its

possession, custody or control; or (ii) producing the missing documents.  *See* Fed. R. Civ. P.

26(e)(1).  Nevertheless, Mantel made no effort to supplement his responses or produce

responsive documents during the course of fact discovery.  Ungberg Decl. ¶ 7-10.

**B.**     **Preclusion of Plaintiff's Evidence is Warranted under Rule 37(c) and the Court's Inherent Power**

Mantel's discovery misconduct warrants preclusion of his evidence.  Specifically, this

Court should (i) bar Mantel seeking to introduce any evidence to establish the merits of his

claim, *see* Section II., *infra*; and (ii) exclude from consideration any documentary evidence that Mantel did not produce during the course of fact discovery.  Preclusion is appropriate under the circumstances and firmly within this Court's authority.

Federal Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), that party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  *See* Fed. R. Civ. P. 37(c)(1).  "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence."  *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 606-07 (S.D.N.Y. 2004) (collecting cases).  In addition, district courts possess broad inherent powers to sanction parties for discovery misconduct.  *See Winn v. Associated Press*, 903 F. Supp. 575, 580–81 (S.D.N.Y. 1995), aff'd, 104 F.3d 350 (2d Cir. 1996) ("The Federal Rules of Civil Procedure were designed to afford each party a full and fair opportunity to conduct discovery necessary for trial preparation. . . . A federal district court possesses broad inherent power to impose sanctions in response to abusive litigation practices, thereby ensuring the proper administration of justice.").  Whether under the express provisions of the Federal Rules or pursuant to the Court's inherent power to oversee litigation, this Court has the authority to grant the relief requested by Defendants.

1. *Mantel's failure to participate in fact discovery was not substantially justified.*

Courts have held that "substantial justification" under Federal Rule 37(c) means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."  *See, e.g., Kunstler v. City of New York*, 242 F.R.D. 261, 264–65 (S.D.N.Y.2007).  "The burden of proving substantial justification rests with the party which has failed to disclose information."  *Id.*

This is not a case where a plaintiff has made a good faith attempt to meet its discovery obligations but the parties disagree over whether additional documents should have been produced.  Here, Mantel simply ignored his obligations outright: he failed to supplement his damages calculation, even after receiving Defendants document production, and failed to produce a single document throughout six months of fact discovery, despite representing that he would do so.  *See* Ungberg Decl. ¶¶ 4-10.  Faced with this circumstance, no reasonable person could conclude that parties could differ as to whether Mantel's conduct complied with his obligations under the Federal Rules.  He has not.

      2.   *Defendants' have been prejudiced by Mantel's misconduct.*

Courts have interpreted "harmlessness" under Federal Rule 37(c) as the "absence of prejudice."  *See Ritchie Risk-Linked Strategies Trading, LTD v. Coventry First LLC*, 280 F.R.D. 147, 158-159 (S.D.N.Y. 2012).  The burden to prove "harmlessness" rests on the party failing to adhere to its disclosure obligations.  *Id.*  Defendants were severely prejudiced by Mantel's failure to supplement his initial disclosures to include a computation of his damages, or to produce any documents in the course of discovery.

First, Defendants made the decision to litigate this case to summary judgment in large part on the basis of the information produced in the course of discovery (or lack thereof).  At the close of fact discovery, Mantel had failed to produce any evidence, including relating to his (i) ownership of the Photograph at issue; (ii) licensing fees or compensation received for exploitation of the Photograph; or (iii) computation of the damages at issue in this case. Ungberg Decl. ¶¶ 7-10.  For Mantel to move for summary judgment on the basis of documentary evidence produced for the first time three months after the close of fact discovery is classic litigation by ambush.  This is precisely the sort of "sandbagging" that Rule 37 was designed to

eliminate.  *See Ebewo*, 309 F. Supp. at 606-07.  The prejudice to Defendants is self-evident, and to find otherwise would only encourage similar unsavory tactics in the future.

Second, Mantel's inability to articulate his damages or supply evidence to support any of his allegations directly impacted Defendants' litigation strategy.  Throughout this case, the parties have repeatedly held discussions in an attempt to settle this litigation; in late June, 2017, the parties conducted a half-day settlement conference with the benefits of the assistance of Magistrate Judge Parker.  *See* Ungberg Decl. ¶ 11, Ex. F at 3:9-10.  During this period, particularly following the close of fact discovery and in advance of the settlement conference, Defendants' strategy and settlement posture relied on the information (or lack thereof) disclosed by Mantel. *See* Ungberg Decl. ¶¶ 7-10.  Defendants therefore spent considerable time and attorneys' fees pursuing settlement negotiations, all while Mantel held back material evidence that would naturally have effected Defendants' strategy and settlement posture.  *See* Ungberg Decl. Ex. F at 4:15-7:2.

3. *Dismissal of Mantel's damages claims and exclusion of his documentary evidence is appropriate under the Federal Rules.*

In considering whether to exclude evidence under Federal Rule 37, courts in the Second Circuit are guided by a non-exclusive list of four factors: (i) the party's explanation for its failure to disclose; (ii) the importance of the evidence; (iii) the prejudice suffered by the opposing party; and (iv) the possibility of a continuance.  *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) (collecting cases).  Here, each of these factors weigh strongly in favor of precluding Mantel's claims and evidence.

<u>First</u>, Mantel has no adequate explanation for failing to supplement his initial disclosures or failing to produce responsive documents in this action.[2]  For example, on July 14, 2017, Mantel sought leave to produce information relating to Mantel's alleged license agreement with the *Daily Mail*.  *See* Ungberg Decl. ¶ 12, Ex. F at 3:1-7:6.   The Court afforded Mantel's counsel with an opportunity to explain why those documents had not been produced during fact discovery; she explained only that Mantel's search of his records and solicitation of documents from the *Daily Mail* "took a while." *See id.*, Ex F at  4:5.  The application was denied.  *Id* at 16:19-7:6*.*  Defendants have no reason to believe that Mantel will have any better explanation at this point.

<u>Second</u>, the categories of documents and damages information that Mantel failed to produce or disclose in the course of fact discovery go to the very heart of the claims at issue in this litigation.  *See* Ungberg Decl. ¶¶ 7-10.  Without this evidence, Mantel cannot establish the basic elements of his copyright or DMCA § 1202 claims, which weighs in favor of preclusion. *See Point Productions A.G. v. Sony Music Entm't*, No. 93-civ-4001(NRB), 2004 WL 345551, at \*11 (S.D.N.Y. Feb. 23, 2004) (concluding that the importance of evidence to party's case "only serves to underscore the inexcusable quality of its delayed submission" and ordering preclusion).

<u>Third</u>, for the reasons set forth in Section I. B. 2, *supra*, Mantel's dilatory tactics have imposed significant prejudice on Defendants.

<u>Finally</u>, granting a continuance at this point in the litigation would only exacerbate the delay and harm imposed on Defendants, not remedy it.  As plaintiff, Mantel bears the burden of proof on all of his claims and to vigorously prosecute his case.  Given Mantel's complete failure

---

[2] Simple negligence is sufficient to warrant preclusion; the Second Circuit has held that preclusion under Rule 37(c) does <u>not</u> require a finding that the party in question acted in bad faith.  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)

to adhere to his most basic discovery obligations, providing a Mantel with an opportunity to introduce evidence at this late point in the litigation would only secure to him the benefit of his misconduct.  *See Design Strategy*, 469 F.3d at 297 (affirming lower court's preclusion of damages testimony and evidence in part because of "[t]he prejudice to the defendants in having to prepare for this evidence would have been severe, as discovery would have had to be reopened").

For the foregoing reasons, this Court should (i) bar Mantel seeking to introduce any evidence of his actual damages or lost profits; and (ii) exclude from consideration any documentary evidence that Mantel did not produce during the course of fact discovery.

## II. PLAINTIFF'S MOTION SHOULD BE DENIED AND DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM

Defendants oppose Mantel's motion for partial summary judgment on copyright liability on the grounds that he lacks admissible evidence to establish that the Photograph is the subject of a validly registered copyright, and has no evidence of actual damages or lost profits.  But even if this Court were to permit Mantel to rely on the 059 Registration, Defendants are nevertheless entitled to summary judgment dismissing Mantel's copyright infringement claims because Defendants' use of the Photograph as part of the Video was a protected fair use under Section 107 of the Copyright Act.

## A. Plaintiff's Copyright Infringement Claims Must Be Dismissed Because He Cannot Show that the Photograph is the Subject of a Valid Copyright Registration.

To prevail on his claim for copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 203 (S.D.N.Y. 2010) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Part of

establishing ownership of valid copyright is showing that the work at issue has been registered with the Copyright Office; registration is a prerequisite to pursuing a federal infringement action. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.").  Accordingly, Mantel's copyright claims must be dismissed unless the Photograph was the subject of a valid copyright registration *before* the date of this lawsuit.  *See, e.g.  Zuma Press, Inc. v. Getty Images (US), Inc.*, No. 16 Civ. 6110 (AKH), 2017 WL 2829517, at *4 (S.D.N.Y. June 29, 2017) (noting that "courts in this district are virtually unanimous on this point" and collecting cases). Mantel cannot show that the Photograph is subject to a valid copyright registration, and therefore his copyright infringement claims must be dismissed.

1.      *Mantel's group registration must be excluded because Mantel failed to produce it prior to the end of fact discovery.*

As set forth in Section I., *supra*, Mantel's failure to participate in fact discovery warrants preclusion of all documentary evidence submitted in support of his Motion, including the 059 Registration and related copyright application.  Without these documents, Mantel has no admissible evidence to show that the Photograph is subject to a valid copyright registration.  Accordingly, Mantel's copyright claims must be dismissed for failure to establish ownership of a validly registered copyright or the pre-registration requirement under 17 U.S.C. § 411(a).

2.      *In the alternative, the 059 Registration is not prima facie evidence of registration of the Photograph at issue in this case.*

Even if the Court were to permit Mantel to rely on the 059 Registration, the certificate alone is insufficient to establish that the Photograph is subject to a valid registration.  The mere existence of the 059 Registration serves only as "prima facie evidence of the validity of the copyright and of *the facts stated in the certificate*."  17 U.S.C. § 410(c) (emphasis added).  On its

face, however, nothing in the 059 Registration substantiates that the Photograph is in fact one of the photos included within the group registration.  The certificate identifies only a "Group Registration of Published Photographs; 2016 Photo Collection; all published 1/5/2016-6/15/2016; 25 Photographs."  *See* Declaration of John Mantel, dated August 23, 2017, (the "Mantel Decl.") [Dkt. No. 66].  The 059 Registration contains no details about names or dates of each photograph, their subject matter, when each was individually taken or published, or any other identifying information.  *Id.*  In short, Mantel may hold a copyright to 25 unspecified photographs dating from 2016, but nothing in the 059 Registration plausibly links the registration with the Photograph at issue in this case.

3.     *In the alternative, whether the Photograph is validly covered by the 059 Registration is a factual dispute that should be resolved at trial.*

Finally, in the event that the Court permits Mantel to rely on the 059 Registration and is willing to consider Mantel's declaration as competent evidence linking the 059 Registration with the Photograph, Defendants respectfully submit that they should be permitted to test Mantel's testimony via cross-examination at trial.  By relying on his own testimony to substantiate the connection between the 059 Registration and the Photograph, the issue becomes one of credibility, not mere reliance on the evidentiary weight of a copyright certificate.  *See, e.g. Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (noting that assessment of credibility is a matter for a jury, not the Court on summary judgment and collecting cases).  Moreover, summary judgment in favor of Mantel here would be inappropriate because it would be based on evidence that Defendants were never able to challenge or test during fact discovery, and would reward Mantel's misconduct.  *See* Section I., *supra*.  Accordingly, at the very least, the evidentiary weight of the 059 Registration and Mantel's testimony regarding the registration should be reserved for trial to allow Defendants fair opportunity to test the veracity of this evidence.

**B.  Defendants' Use of the Photograph in Conjunction with News Reporting is a Protected Fair Use under Section 107 of the Copyright Act.**

Apart from whether the 059 Registration is excluded from consideration in support of Mantel's Motion, Defendants are entitled to summary judgment dismissing Mantel's copyright infringement claim because Defendants' use of the Photograph is a protected fair use under the Copyright Act.  In the alternative, Defendants have raised a genuine issue of material fact as to whether the Video is a fair use, which should be resolved at trial, and therefore Mantel's Motion should be denied.

Section 107 of the Copyright act provides that the use copyrighted works for certain protected purposes, including news reporting, can qualify of a fair use immune from liability for infringement.  *See* 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . for purposes such as . . . comment [and] news reporting . . . is not an infringement of copyright.").  Defendants' brief use of the Photograph in connection with reporting on a local news event was a fair use; Defendants are therefore entitled to summary judgment dismissing Mantel's copyright infringement claims.

In determine whether a particular use is fair, courts analyze four non-exclusive factors: "(1) 'the purpose and character of the use;' (2) 'the nature of the copyrighted work;' (3) 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole;' and (4) 'the effect of the use upon the potential market for or value of the copyrighted work.'" *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) (*citing* 17 U.S.C. § 107.)  Although the defendant carries the burden of proving that its use was fair, a party does need to prevail on each of the four factors in order to do so.  *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476-77 (2d Cir. 2004).  "[A]ll factors must be explored and the results weighed together in light of the purposes of copyright and the fair use defense." *Id.* (citing *Campbell v.*

*Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994)).  As detailed below, the four statutory factors

weigh in favor of concluding that Defendants' use of the Photograph was fair.

    1.    *The purpose and character of the use of the Photograph in the Video weigh in favor of finding fair use.*

In determining "the purpose and character" of the defendant's use, courts have broad

discretion to examine all circumstances surrounding the use.  "The central purpose of this

investigation is to see . . . whether the new work merely supersedes the objects of the original

creation,… or instead ads something new, with a further purpose or difference character, altering

the first with new expression, meaning or message. . . ."  *Campbell*, 510 U.S. 569, 578–79

(internal citations omitted).  This analysis includes whether the defendant's work is

transformative, whether it was created for a commercial or profit-making motive, and the

defendants' conduct in creating the secondary work, but none of these factors are dispositive on

their own.[3]  Here, Defendants used the Photograph in connection with news reporting on a

notable local event and, in the process, transformed the Photograph beyond its original context

and meaning.[4]  The first factor weighs heavily in favor of finding fair use.

First, in assessing the first factor, the Court should take into account that news reporting

is one of the categories of use expressly mentioned in the Copyright Act as a particularly

appropriate to the application of the fair use doctrine.  17 U.S.C. § 107.  "There is a strong

presumption that factor one favors the defendant if the allegedly infringing work fits the

---

[3] Mantel's argument that the Second Circuit mandates the examination of three "sub-factors" overstates the holding of *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004)  See Motion at 10.  *NXIVM* held that a court must consider allegations of defendant's bad faith, but noted that even a finding of bad faith would not stand as a bar to finding fair use.  *Id.* at 479.  The Second Circuit stressed that none of the elements for consideration under the first fair use factor can be dispositive of the entire analysis.  *See NXIVM Corp.*, 364 F.3d at 479 (noting that "[i]f no statutory factor can be dispositive . . . neither can a single subfactor").

[4] Mantel has conceded that Defendants are engaged in the business of reporting news.  *See* Mantel Decl. at ¶¶ 14, 19, 24, 29, 34, 39, 44, 49, 54, 59, and 64.

17

description of uses described in § 107." *NXIVM Corp. at* 477.  Indeed, the Second Circuit has

recognized that there is a compelling public interest in the distribution of news.  *See Swatch*

*Group Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81–82 (2d Cir. 2014).  Here, the

Defendants' Video succinctly reported on a local news event that occurred in New York in May

2016.  Charlier Decl. ¶ 5, Ex. D.  The Photograph was just one of several images and video clips

used and served to illustrate the report.  *See Id.*

 <u>Second</u>, Defendants' use of the Photograph was transformative because it provides

context and meaning that are absent when considering the Photograph alone.[5]  *See Campbell*,

510 U.S. at 579 (describing transformational uses as "altering the first [work] with

new . . . meaning or message").  On its own, the Photograph simply depicts Ms. Sun and several

children without any context or information about the significance of the gathering depicted in

the picture.  *See* Mantel Decl. Ex. A.  The Video, conversely, puts the Photograph in context by

conveying essential information about Ms. Sun's unique charitable event, her background and

upbringing, and the non-profit organizations that assisted in organizing the event.  Charlier Decl.

Ex. D.  The Video also contains commentary about Ms. Sun's character.  *See id*. Ex. D.  The

Second Circuit has held that depicting images as part of a broader factual context is

transformative.  *See Bill Graham Archives* at 608-09 (affirming that use of images of the

*Grateful Dead* as part of a chronology in a historical retrospective book about the famous band

was a transformative fair use).  But even if the Court were to conclude that the Video is not

---

[5] Mantel argues that Zazoom's Video was not transformative because it used the Photograph "in the exact same away and in the same context as it was used by the *New York Post* upon initial publication."  Plaintiff's Memorandum of Law [Dkt. No. 62] ("Pls. Mem.") at 11.  This argument fails because it attempts to claim for Mantel copyrighted elements from an entirely separate work – the *New York Post* article – which he does not own or have any right to.  In analyzing whether the Video is transformative, the Court must compare it to the work alleged to have been infringed, the Photograph, and not the article it was published with.  By itself, the Photograph it provides no explanation of why the figures in the photo are significant or newsworthy.  *Compare* Mantel Decl. Ex. A *with* Ex. B. Mantel ignores the difference.

transformative, that would not bar a finding that Defendants' use of the Photograph was fair because the purpose and character of the use – in furtherance of news reporting – often relies on the accurate distribution of information.  *See Swatch*, 756 F.3d at 84 (noting that "[i]n the context of news reporting . . . the need to convey information to the public accurately may in some instances make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration").

Third, the fact that Zazoom and Defendants are for-profit entities does not automatically bar a finding of fair use.  The Second Circuit has recognized that "[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek a profit" and has "discounted this consideration where the link between [the defendant]'s commercial gain and its copying is . . . attenuated such that it would be misleading to characterize the use as 'commercial exploitation.'"  *Swatch,* 756 F.3d at 83 (internal quotations omitted); *see also Campbell*, 510 U.S. at 584 ("If, indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses" listed in § 107.).  Lessening the "sting" of commercialism is the fact that Defendants were not

Mantel's reliance here on *Harper & Row*[6] is misplaced; in that case, the defendants obtained plaintiff's unpublished manuscript of the autobiography of President Ford and then used it to create an article featuring excerpts from the unreleased book, which scooped other coverage of the initial release that was intended as an "exclusive."  *See id.* at 542.  Although defendants asserted a fair use defense, the Court held that they had intentionally "supplant[ed] the copyright holder's commercially valuable right of first publication" and were relying on the "scoop" for a commercial purpose.  *See id.* at 561–62.  The reasoning underlying *Harper & Row* is

---

[6] *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985)

inapplicable here: Defendants did not "scoop" Mantel or deprive him of the right to determine the initial publication of his work.  Nor was Mantel's work or the *New York Post* article in any way "exclusive" – Ms. Sun's charity event was widely covered by local news in New York.  *See* Charlier Decl. ¶ 4, Exs. A, B and C.

Finally, there is no evidence that Defendants acted in bad faith;[7] the fact that they used the Photograph without permission, without more, is insufficient.  *Blanch v. Koons,* 467 F.3d 244, 256 (2d Cir. 2006) ("The only act of bad faith alleged here is that [defendant] used [plaintiff's] photograph without first asking her permission.  We are aware of no controlling authority to the effect that the failure to seek permission for copying, in itself, constitutes bad faith").

Taken together, the first fair use factor strongly favors finding that Defendants' use of the Photograph was a protected fair use.

2. *The nature of the Photograph — a published, factual work — weighs in Defendants' favor.*

In assessing the "nature of the copyrighted work," courts generally look to two considerations: "first, the extent to which it is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination" and "second, whether it is unpublished. . . ." *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) (citing *Harper & Row*, 471 U.S. at 563-63).  The parties do not dispute that the Photograph was published at the time that Zazoom created the Video, and the record establishes that the Photograph is a factual work.  This factor weighs in Defendants' favor.

---

[7] Mantel asserts that Defendants acted in bad faith because they purportedly omitted Mantel's "gutter credit."  *See* Pls. Mem. at 15.  As set out in more detail in Section III A, this argument fails because the Video does, in fact, contain Mantel's gutter credit.  *See* Charlier Decl. ¶ 5, Ex.  D.

The circumstances of the creation of the Photograph demonstrate that it is intended to be "factual" as opposed to a "creative" work.  Mantel notes that the subject, Ms. Sun, was "considered newsworthy" at the time of the Photograph, and he claims that he immediately licensed the Photograph to two news outlets, the *New York* Post and the *Daily Mail.*  See Mantel Decl. at ¶¶ 5, 6 and 8.  There is no indication in the record that either the *New York Post* or the *Daily Mail* sought the Photograph to publish for the sake of its own artistic merit; by all accounts, the Photograph was published in order to illustrate the news outlets' factual coverage of Ms. Sun's event.

Mantel's cited authority does not support his argument on the third factor.  *See* Pls. Mem. at 17.  If anything, it supports that the nature of the Photograph favors Defendants' fair use defense.  For example, the court in *Monster Communications, Inc. v. Turner Broadcasting*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996) did note that photographs of "actual people, places and events" can deserve as much protection as fictional works, but did so in reference to the photography of Ansel Adams, the famous kiss captured in *V-J Day in Times Square*, and the iconic image of the U.S. Marines raising the American Flag on Iwo Jima.  *Id.* at 494.  The court cautioned, however, that "[t]here is a public interest in receiving information concerning the world in which we live," that "[t]he more newsworthy the person or event depicted, the greater the concern that too narrow a view of the fair use defense will deprive the public of significant information," and ultimately concluding that the defendants were likely to prevail on their fair use defense.  *Id.* at 494, 498.[8]  This reasoning aptly captures why Defendants' use of the Photograph in connection with a news video about Ms. Sun is entitled to protection as a fair use.

---

[8] See also *Baraban v. Time Warner, Inc.*, No. 99 Civ. 1569(JSM), 2000 WL 358375 (S.D.N.Y. Apr. 6, 2000) (holding defendant's incorporation of plaintiff's pro-nuclear power ad in a book that criticized the nuclear energy industry was a fair use).

Accordingly, the third factor favors defendants.  *See Consumers Union of United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983) ("Since the risk of restraining the free flow of information is more significant with informational work, the scope of permissible fair use is greater.").

> 3. *The fact that the Video displays the entirety of the Photograph does not preclude a finding of fair use.*

While defendants concede that the entire Photograph is depicted in the Video, that fact alone is not dispositive of the third factor.  "[C]opying [an entire work] does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham Archives*, 448 F.3d at 613.  This factor is flexible, and cannot be reduced to a simple percentage measure.  *See Campbell*, 510 U.S. at 586-87 (noting that the "extent of permissible copying varies with the purpose and character of the use").

Defendants' use of the Photograph was reasonable in light of the purpose and character of the Video: the Photograph was just one of many imagines incorporated into Zazoom's work, and appeared on screen for just 6 out of the Video's 69 second runtime.  *See* Charlier Decl. ¶ 5, Ex. D.  Mantel's arguments that Defendants used "too much" are unavailing,[9] and disregard that the event was over by the time it gained any publicity, on May 8, 2016.  Moreover, given that the individual at the center of the news story was a "bride," and the importance of photography to weddings in general, the notion that the news story could be told without using any photos of

---

[9] Mantel's heavily reliance on *Monge v. Maya Magazines, Inc.*, 688 F. 3d 1164 (9th Cir. 2012) is misplaced, particularly in light of the Second Circuit's decision in *Swatch*, which emphasized the important First Amendment concerns implicated by overly narrow restriction of the fair use doctrine in the news reporting context.  *See Swatch*, 756 F.3d at 81-85.  Likewise, *Kienitz v. Sconnie Nation LLC*, 766 F. 3d 756, 759 (7th Cir. 2014) is inapplicable to this case: there, defendants took plaintiff's photograph of a local mayor in order to create and sell t-shirts, which lampooned the mayor's efforts to shut down a popular street party. *Id.* at 757.  The defendants in *Sconnie* were not reporting on a newsworthy event, the use (selling t-shirts) was overtly commercial, and the photo in question had no relation to the policy critique.  *Id.* at 759.

Ms. Sun is unrealistic.  At worst, the third factor is neutral or slightly favors Mantel, but is not sufficient on its own to bar Defendants' fair use defense.

> 4.     *Mantel cannot show any negative effects on the value of the Photograph as a result of Defendants' use.*

The fourth factor examines the effect of the use on the market value for the copyrighted work.  "The court looks to not only the market harm caused by the particular infringement, but also to whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work."  *Bill Graham Archives*, 448 F.3d at 613 (.  It requires that a Court balance "the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied."  *Id* (citations omitted).

Although Mantel devotes the majority of his argument to this factor, his failure to introduce any evidence to support that there is a market for his photography severely undercuts the strength of this factor.  *See* Ungberg Decl. ¶ 9, 10 and 12, Ex. F at7:2(noting that failure to produce damages information is "highly prejudicial").  Without evidence of any tangible market harm, Mantel resorts to hoping that that this Court will simply *presume* that some harm must have occurred.  The Court should decline the invitation.

First, as a matter of equity, Mantel is not entitled to a presumption of market harm in the face of his failure to participate in discovery.  *See* Section I., *supra*.  As the plaintiff, it is Mantel's obligation to come forward with proof of the market for his work.  He failed to do so, and therefore does not have any evidence to establish he has suffered actual damages or that that Defendants' use has negatively impacted the market for his work.  If the Court were to rescue Mantel from his negligence by presuming market harm, it would effectively render meaningless any preclusion order imposed on Mantel for failure to disclose his damages calculation or supporting evidence.

Second, as a matter of law, neither *Sony Corp.*,[10] *Campbell*,[11] nor *Hustler Magazine*[12] stand for the proposition that a court may simply assume market harm because Defendants' use has some connection to commerce.  To the contrary, the Supreme Court in *Campbell* stressed that "*Sony itself called for no hard evidentiary presumption*" of market harm and held that "no 'presumption' or inference of market harm that might find support in *Sony* is applicable to a case involving something beyond mere duplication for commercial purposes."  *Campbell* 510 U.S. at 584, 591 (emphasis added);*see also* 4 Nimmer on Copyright, § 13.05[c] (criticizing *Sony* and noting that "[s]uch a categorical rule is unwarranted").  To the extent *Sony* does imply the availability of a presumption of market harm, it is inapplicable here because Defendants' use was not "purely commercial" or merely duplicative of the Photograph.

Finally, Mantel's arguments that Defendants' secondary use would impair the market for his photography depends on the faulty assumption that Mantel's right to compensation for his work necessarily trumps the public's interest in the prompt distribution of newsworthy information.[13]  *See Swatch*, 756 F.3d at 83–84 (highlighting first amendment concerns).  The existence of the fair use doctrine and its codification in Section 107 of the Copyright Act reinforce that exclusive rights of authors and creators to monetize their work is not absolute.  Those interests can and should bend where, as here, superior societal interests are in play.  This is not to say that photographers are entitled to no protections; in the case with truly exclusive or unique photograph of the sort described by the court in *Monster Communication*, the balance of

---

[10] *Sony Corp. of America v. Universal City Studios, Inc*., 464 U.S. 417, 450-51 (1984)

[11] *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994)

[12] *Hustler Magazine, Inc. v. Moral Majority, Inc*., 796 F.2d 1148, 1155 (9th Cir. 1986)

[13] Mantel claims – although does not provide any proof – that he was paid for his photograph by the *New York Post* and the *Daily Mail*.  Mantel Decl. ¶¶1-2.  He does not explain what additional revenue he hoped to secure, or what future opportunities were lost.

the public interests may be different. *Monster Communications,* 935 F. Supp. at 894. But, that is

far from the case presented here.  Particularly, given that Plaintiff has no evidence whatsoever

that there was a market for the Photograph in the days or weeks following the release of the

underlying article, or that the Video caused his Photograph to lose value in the secondary market.

The fourth factor favors Defendants or, at worst, is mixed.  Taken together with the other

factors, the Court should find that Defendants' use of the Photograph was a fair use and dismiss

Mantel's copyright claim in its entirety.

> 5.      *In the alternative, Defendants have raised a genuine issue of material fact as to whether the Video was a fair use under Section 107, which should be resolved at trial.*

Finally, even if this Court were to conclude that Defendants are not entitled to summary

judgment that the Video was a fair use, at a minimum Defendants have raised material issues of

fact which should be resolved at trial.  The issue of fair use is a detailed, factual inquiry that

presents a mixed question of fact and law.  *See, e.g.*, *Bill Graham*, 448 F.3d at 608.  A court may

decide fair use on summary judgment where there are no issues of material fact.  *Id.*  When,

however, the weight of the factors does not clearly favor one position and reasonable minds

could differ as to whether fair use applies, resolution by a jury is appropriate.  *See Ranieri v.

Adirondack Dev. Grp.*, *LLC*, 164 F. Supp. 3d 305, 354 (N.D.N.Y. 2016).  Accordingly, if this

Court were to deny Defendants' motion for summary judgment on fair use, they respectfully

submit that Mantel is likewise not entitled to summary judgment and the issue ought to be

reserved for trial.

## III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DMCA SECTION 1202 CLAIM

In relevant part, Section 1202(b) of the DMCA states that:

> No person shall, without the authority of the copyright owner or the
> law—

> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered . . . or
>
> (3) distribute, import for distribution, or publicly perform works, copies of works . . . knowing that copyright management information has been removed or altered . . .
>
> knowing, or . . having reasonable grounds to know, that it will *induce, enable, facilitate, or conceal* [copyright] infringement . . . .

17 U.S.C. §1202(b) (emphasis added).  Accordingly, to prove of a claim for removal of CMI under § 1202(b), Mantel must show that (i) the Photograph contained CMI; [14] (ii) Defendants either removed or altered of the CMI, or distributed the Photograph knowing that such CMI had been removed or altered; and (iii) Defendants acted with the intent to "induce, enable, facilitate, or conceal" copyright infringement.  *See Banxcorp* v. *Costco Wholesale Corp*., 723 F. Supp. 2d 596, 609-610 (S.D.N.Y. 2010) (defining elements and collecting cases).

**A.      Plaintiff Cannot Show that CMI was Removed or Altered, or that Defendants had Intent to Facilitate or Conceal Copyright Infringement.**

Summary judgment dismissal of a DMCA § 1202(b) claim is warranted where, as here, Mantel lacks any evidence to show that Defendants removed the CMI in question, or did so with the requisite intent.  *See, e.g.*, *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2d Cir. 2014) (affirming that DMCA claim "was properly dismissed on summary judgment because it had no support in the record"); *Ward v. National Geographic Society*, 208 F. Supp. 2d 429, 449-50 (S.D.N.Y. 2002) (dismissing DMCA claim on summary judgment where plaintiff failed to

---

[14] The DMCA defines "copyright management information" broadly to mean any information conveyed with a work, including, *inter alia*, the name and other identifying information about the author of the work.  *See* 17 U.S.C. § 1202(c)(1)–(8).  For the purposes of this motion, Defendants do not dispute that a "gutter credit" — a photographer's name placed beside an image — can constitute CMI within the meaning of the DMCA.  *See, Agence France Presse v*. Morel, 769 F. Supp.2d 295, 305–06 (S.D.N.Y. 2011) (collecting cases which recognize a broad definition of CMI under statute).

introduce evidence that defendant knew its copyright notice was false when placed next to plaintiff's photographs); *Thron v. HarperCollins Publishers, Inc.*, No. 01 Civ. 5437(JSR), 2002 WL 1733640, at *1 (S.D.N.Y. Jul. 26, 2002) (finding dismissal of DMCA claim warranted where plaintiff "offered no competent, admissible evidence to support any finding that defendants removed or altered [] information 'intentionally' as required by the statute").

First, Mantel cannot show that CMI was removed or altered within the meaning of the DMCA. Mantel's Complaint alleges the existence of only one type of CMI, a "gutter credit" printed in the *New York Post* article that "identifying him as the photographer of the Photograph." *See* Ungberg Decl., Ex A at ¶¶ 18, 33–34. The Video, however, contains an excerpt of the relevant *New York Post* article, which includes Mantel's in-context gutter credit alongside the Photograph:



*See* Charlier Decl., Ex. D (excerpt at 00:39). Accordingly, the available evidence directly contradicts Mantel's allegations that his CMI was altered or removed.

Second, Mantel lacks any evidence to show that Defendants had the requisite intent to "induce, enable, facilitate, or conceal" copyright infringement as required under the statute. Defendants' served discovery requests seeking the identity of witnesses or document custodians with information that would support Mantel's DMCA claim.  *See* Ungberg Decl. Ex. C at Requests Nos. 14-16; Ex. D at Interrogatory No. 5.  In response, Mantel admitted that he had no documents in his possession, custody or control to support his DMCA claim.  *See* Ungberg Decl. Ex. C at Response Nos. 14-16; Ex. D at Interrogatory No. 5 (incorporating responses to document Request Nos. 13-160.)  Mantel failed to identify any such individuals and, as discussed above, failed to produce any documents to substantiate any aspect of this claim. Moreover, none of the documents produced by Defendants in this action plausibly support that Zazoom or any other Defendant possessed the requisite intend under the DMCA.  Mantel therefore lacks any evidence of Defendants' intent.  Moreover, the fact that Mantel's gutter credit does appear in the Video undercuts the idea that Defendants had ill intent.

Accordingly, Mantel cannot establish two of the elements of his DMCA § 1202 claim, which therefore fails as a matter of law.  Defendants are entitled to summary judgment dismissing Mantel's DMCA claim in its entirety.

## <u>CONCLUSION</u>

For each of the foregoing reasons, the Court should grant Defendants' motion for summary judgment on Plaintiff's copyright infringement and DMCA § 1202 claim, dismissing each in their entirety, and enter judgement in favor of Defendants.

Dated: September 22, 2017

**FRANKFURT KURNIT KLEIN & SELZ, P.C.**

By: ___*/s/ Edward H. Rosenthal*___

Edward H. Rosenthal
Andrew J. Ungberg
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax: (212) 593-9175

*Attorneys for Defendants*