Richard Liebowitz
Yekaterina Tsyvkin
James H. Freeman
LIEBOWITZ LAW FIRM, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
rl@liebowitzlawfirm.com

*Counsel for Plaintiff John Mantel*


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN MANTEL,<br><br>                 Plaintiff,<br><br>    - against –<br><br>GANNETT COMPANY, INC., HEARST STATIONS, INC., HEARST NEWSPAPERS, LLC, TOSHIBA AMERICA INFORMATION SYSTEMS, INC., LENOVO (UNITED STATES) INC., GANNETT SATELLITE INFORMATION NETWORK, LLC, VERIZON SERVICES CORP., TEGNA, INC., MICROSOFT CORPORATION, AOL INC., AND ZAZOOM, LLC<br><br>                 Defendants. | 1:16-cv-05277 (AJN)<br><br>ECF Case<br><br><br>ORAL ARGUMENT REQUESTED |


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
LIABILITY AGAINST DEFENDANTS FOR COPYRIGHT INFRINGEMENT
AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON BOTH COUNTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iv

PRELIMINARY STATEMENT .................................................................................. 1

UNDISPUTED FACTS ............................................................................................... 4

ARGUMENT .............................................................................................................. 6

**POINT I: THE UNDISPUTED FACTS SHOW THAT PLAINTIFF HAS ESTABLISHED THE ELEMENTS OF HIS COPYRIGHT INFRINGEMENT CLAIM** .................................................................................................................. **6**

    A.  PLAINTIFF HAS SATISFIED HIS BURDEN OF PROVING HIS POSSESSION OF A VALID COPYRIGHT REGISTRATION FOR THE SUBJECT PHOTOGRAPH ................... 6

    B.  DEFENDANTS HAVE FAILED TO PROFFER FACTUAL EVIDENCE TO REBUT THE PRESUMPTIVE VALIDITY OF THE 059 REGISTRATION ........................................... 7

        1.  As a Matter of Law, the 059 Registration is Incorporated by Reference into the Complaint and, In Any Event, is a Matter of Public Record ..................... 8

        2.  On its Face, the 059 Registration Meets ALL Legal Requirements for Group Registrations of Photographs ............................................................... 9

        3.  Defendants Have Failed to Produce ANY Evidence to Prove that the Subject Photograph is Not On Deposit with the 059 Registration ................. 11

        4.  Defendants Have Failed to Allege That Plaintiff Committed Fraud on the Copyright Office or Otherwise Misrepresented Facts in His Application ..... 13

    C.  THERE IS NO FACTUAL DISPUTE CONCERNING THE SECOND ELEMENT BECAUSE DEFENDANTS ADMIT THEY ACTUALLY COPIED THE SUBJECT PHOTOGRAPH WITHOUT AUTHORIZATION ............................................................................... 14

**POINT II: THE COURT MAY GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY WITHOUT REGARD TO PROOF OF DAMAGES** ........................................................................................................... **15**

    A.  PLAINTIFF IS NOT REQUIRED TO SHOW PROOF OF ACTUAL DAMAGES FOR THE COURT TO ENTER JUDGMENT AGAINST DEFENDANTS ON LIABILITY ........... 16

    B.  IN COPYRIGHT INFRINGEMENT ACTIONS, COURTS ROUTINELY AWARD STATUTORY DAMAGES WITHOUT ANY EVIDENCE OF ACTUAL DAMAGES. ........ 16

**POINT III:  DEFENDANTS' GENERIC CLAIM OF "FAIR USE" FAILS ....... 17**

   A.  FACTOR #1:  NEWS PUBLISHERS' SECONDARY USE OF PHOTOGRAPHS FIRST
      PUBLISHED BY A COMPETING NEWS REPORT IS NEVER TRANSFORMATIVE ........ 18

     1.  Defendants Fail to Explain How Their Secondary Use is Transformative and
        Fail to Cite ANY Caselaw Authority in the Context of News Reporting ...... 19

     2.  Defendants' Secondary Use of the Subject Photograph Does NOT Contain
        Transformative "Commentary" or Criticism................................................... 22

     3.  Defendants Admit that They are For-Profit Entities Who Used Commercial
        Advertisements to Exploit Mantel's Work ..................................................... 23

     4.  The Record Shows That Defendant Zazoom Acted in Bad Faith (or in the
        Absence of Good Faith) ................................................................................. 24

   B.  FACTOR #2: MANTEL'S SWORN TESTIMONY SHOWS THAT THE PHOTOGRAPH IS
      CREATIVE IN NATURE, PARTICULARLY BECAUSE IT IS A POSED PORTRAIT ........ 25

   C.  FACTOR #3: BY DEFENDANTS' OWN ADMISSION, IT WAS NOT NECESSARY FOR
      DEFENDANTS TO APPROPRIATE THE SUBJECT PHOTOGRAPH BECAUSE OTHER
      IMAGES OF THE EVENT WERE READILY AVAILABLE ......................................... 27

   D.  FACTOR #4: DEFENDANTS HAVE CONCEDED THAT A MARKET EXISTS FOR THE
      SUBJECT PHOTOGRAPH AND, IN ANY EVENT, MARKET HARM IS PRESUMED IN
      CASES INVOLVING WHOLESALE DUPLICATION OF THE WORK FOR PROFIT ........ 28

**POINT IV:  DEFENDANTS HAVE ABANDONED THEIR REMAINING
DEFENSES TO LIABILITY FOR COPYRIGHT INFRINGEMENT ................. 30**

**POINT V:  THE NON-ZAZOOM DEFENDANTS ARE TO BE HELD
STRICTLY LIABLE EVEN THOUGH THEY DID NOT CREATE THE
ZAZOOM VIDEO .................................................................................................. 31**

**POINT VI:  PLAINTIFF'S § 1202 CLAIM SHOULD BE SUSTAINED ............. 31**

   A.  DEFENDANTS CONCEDE THE FIRST ELEMENT OF THE 1202 CLAIM .................... 32

   B.  EVIDENCE OF ZAZOOM'S REMOVAL OF MANTEL'S CMI – AND ZAZOOM'S
      KNOWLEDGE OF THE REMOVAL - IS CLEAR ON THE FACE OF THE VIDEO............ 32

   C.  A TRIABLE ISSUE OF FACT EXISTS AS TO WHETHER ZAZOOM ACTED WITH THE
      INTENT TO INDUCE, ENABLE, OR FACILITATE COPYRIGHT INFRINGEMENT ........ 33

CONCLUSION ............................................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.,*
    747 F.3d 673, 685 (9th Cir. 2014)........................................................................ 10

*Associated Press v. Meltwater U.S. Holdings, Inc.,*
    931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) ............................................................ 19

*Avillan v. Donahoe,*
    No. 13-CV-509(PAE), 2015 WL 728169, at *7 (S.D.N.Y. Feb. 19, 2015)................. 30

*Banxcorp v. Costco Wholesale Corp.,*
    723 F. Supp. 2d 596, 609-610 (S.D.N.Y. 2010) ........................................................ 32

*Baum v. Village of Chittenango,*
    218 F.R.D. 36, 40–41 (N.D.N.Y.2003)...................................................................... 9

*Bill Graham Archives v. Dorling Kindersley, Ltd.,*
    448 F.3d 605 (2d Cir. 2006)..................................................................................... 20

*Binder & Binder PC v. Barnhart,*
    481 F.3d 141, 148 (2d Cir. 2007)............................................................................. 12

*Bridgeport Music, Inc. v. UMG Recordings, Inc.,*
    585 F.3d 267, 279 (6th Cir. 2009) ............................................................................ 24

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
    536 F.3d 121, 130 (2d Cir. 2008).............................................................................. 31

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
    150 F.3d 132, 137 (2d Cir. 1998)............................................................................... 6

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42, 47 (2d Cir. 1991).................................................................................... 8

*D'Amico v. City of N.Y.,*
    132 F.3d 145, 149 (2d Cir. 1998)............................................................................. 12

*Dillion v. Does 1-10,*
    2014 WL 722592, at *5 (N.D. Cal. Feb. 25, 2014) ................................................... 25

*Eastern America Trio Products, Inc. v. Tang Electronic Corp.,*
    97 F.Supp.2d 395, 419 (S.D.N.Y. 2000) ................................................................. 17

**Cases (continued….)**

*Elvis Presley Enters., Inc. v. Passport Video*,
   349 F.3d 622, 628–29 (9th Cir. 2003), *overruled on other grounds as stated in Flexible
   Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) (per curiam)
   .................................................................................................................................. 20

*EMI Christian Music Group, Inc. v. MP3tunes, LLC*,
   844 F.3d 79, 89 (2d Cir. 2016) ..................................................................................... 31

*Entral Group Int'l LLC v. Honey Cafe on 5th, Inc.*,
   2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) .................................................... 17

*F.W. Woolworth Co. v. Contemporary Arts*,
   344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952)................................................ 17

*Fameflynet, Inc. v The Shoshanna Collection, LLC*,
   16 Civ. 7645 (RWS), 2017 WL 4402568 (S.D.N.Y. October 2, 2017)............ 10, 12, 13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 361 (1991)............................................................................................... 6

*Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.*,
   807 F.2d 1110, 1113 (2d Cir.1986)............................................................................. 31

*Fonar Corp. v. Domenick*,
   105 F.3d 99, 104 (2d Cir.), *cert. denied*, 522 U.S. 908 (1997)...................................... 7

*Friedman v. Live Nation*,
   833 F.3d 1180, 1189 (9th Cir. 2016) .......................................................................... 34

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539, 557 (1985)...................................................................................... passim

*Infinity Broadcast Corp. v. Kirkwood*,
   150 F.3d 104, 108 (2d Cir. 1998)................................................................................ 21

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
   413 F.3d 257 (2d Cir. 2005)...................................................................................... 6, 9

*Jackson v. Fed. Exp.*,
   766 F.3d 189, 198 (2d Cir. 2014)................................................................................ 30

*Jewelry LLC v. Zazoom, LLC*,
   1:16-cv-3881 (PGG) (S.D.N.Y. 2016)........................................................................ 34

**<u>Cases (continued….)</u>**

*Keane Dealer Servs., Inc. v. Harts*,
   968 F.Supp. 944, 947 (S.D.N.Y.1997) ........................................................ 29

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811, 820  (2003)........................................................................ 26

*Kerzer v. Kingly Mfg.*,
   156 F.3d 396, 400 (2d Cir. 1998).............................................................. 13

*Krause v. Buffalo and Erie County Workforce Development Consortium, Inc.*,
   425 F.Supp.2d 352, 375 (W.D.N.Y. 2006). ................................................... 9

*L.A. News Serv. v. KCAL–TV Channel 9*,
   108 F.3d 1119, 1122 (9th Cir. 1997) ......................................................... 20

*Los Angeles News Service v. Tullo*,
   973 F.2d 791, 797, 799 (9th Cir. 1992) ...................................................... 22

*Mannion v. Coors Brewing Co.*,
   377 F. Supp. 2d 444, 452-53 (S.D.N.Y. 2005) ............................................. 27

*Marshall v. Marshall*,
   2012 WL 1079550, *26 (E.D.N.Y. March 30, 2012) .................................... 16

*McClatchey v. Associated Press*,
   No. 3:05-CV-145, 2007 WL 776103,  at *3 (W.D. Pa. Mar. 9, 2007) ........................ 19

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
   722 F.3d 591, 598 (4th Cir. 2013) ............................................................ 11

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164, 1176  (9th Cir. 2012) ........................................... 20, 23, 28

*Murphy v. Millenium Radio Group LLC*,
   650 F.3d 295, 306 (3rd Cir. 2011) ............................................................ 20

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data*,
   166 F.3d 65, 72 (2d Cir. 1999)................................................................. 21

*Núñez v. Caribbean Int'l News Corp.*,
   235 F.3d 18, 21 (1st Cir. 2000)................................................................ 21

**Cases (continued….)**

*Pacific and Southern Co., Inc. v. Duncan,*
   744 F.2d 1490, 1496 (11th Cir. 1984) ....................................................................... 22

*Psihoyos v. National Examiner,*
   No. 97 Civ. 7624(JSM), 1998 WL 336655, at *6 (S.D.N.Y. June 22, 1998) ........ passim

*Richard Feiner & Co., Inc. v. H.R. Industries, Inc.,*
   10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) .................................................................... 24

*S.E.C. v. Strauss,*
   No. 09-civ-4150, 2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009)..................................... 8

*Scholz Design, Inc. v. Sard Custom Homes, LLC,*
   691 F.3d 182, 186 (2d Cir. 2012)............................................................................... 6, 7

*Securities and Exchange Commission v. Samuel H. Sloan & Co.,*
   369 F.Supp. 994, 995 (S.D.N.Y.1973) .......................................................................... 8

*SHL Imaging, Inc. v. Artisan House, Inc.,*
   117 F. Supp. 2d 301, 311 (S.D.N.Y. 2000) ................................................................. 27

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,*
   642 F.Supp.2d 167, 188 (S.D.N.Y. 2009) ..................................................................... 9

*Smeraldo v. City of Jamestown,*
   2013 WL 627719, *34 (2d Cir. Feb 21, 2013).............................................................. 26

*Sony Corp. of America v. Universal City Studios, Inc.,*
   464 U.S. 417, 450-51 (1984) ...................................................................................... 29

*Swatch Group Management Services Ltd. v. Bloomberg L.P.,*
   756 F.3d 73, 85 (2d Cir. 2014)..................................................................................... 17

*Szabo v. Errisson,*
   68 F.3d 940, 943 (5th Cir. 1995), *abrogated on other grounds by*
   *Reed Elsevier, Inv. v. Muchnick,* 559 U.S. 154 (2010) ................................................ 11

*Time, Inc. v. Bernard Geis Assocs.,*
   293 F. Supp. 130, 142-43 (S.D.N.Y. 1968) ................................................................ 26

*U.S. v. Am. Soc. Of Composers Authors & Publishers,*
   599 F. Supp. 2d 415, 429 (S.D.N.Y. 2009) ................................................................ 23

**Cases (continued…)**

*Van Der Zee v. Greenidge,*
 2006 WL 44020, *2 (S.D.N.Y. Jan. 6, 2006) .............................................. 17

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,*
 342 F.3d 191, 199 (3d Cir. 2003)............................................................ 21

*Whimsicality, Inc. v. Rubie's Costume Co. Inc.,*
 891 F.2d 452, 455 (2d Cir. 1989)............................................................ 6

*Zomba Enterprises, Inc. v. Panorama Records, Inc.,*
 491 F.3d 574, 584 n. 9 (6th Cir. 2007) .................................................... 24

**STATUTES**

17 U.S.C. § 410(c) ............................................................................... 6
17 U.S.C. § 504(a) ............................................................................... 17
17 U.S.C. § 504(c) ............................................................................... 17
17 U.S.C. § 1202 ........................................................................... passim

**RULES**

Fed.R.Civ.P. 56(e)(2).......................................................................... 12

**TREATISES**

4 Melville B. Nimmer & David Nimmer,
 NIMMER ON COPYRIGHT § 13.01, at 13–6 *159 (1999) ................................ 16

Melville B. Nimmer & David Nimmer,
 2 NIMMER ON COPYRIGHT § 7.16(B)(5)(c) (2013) ...................................... 11

**REGULATIONS**

U.S. Copyright Office, Group Registration of Published Photographs,
 FL-124 (2012)..................................................................................... 10

**OTHER AUTHORITIES**

Matthew D. Bunker, *Eroding Fair Use: The "Transformative Use Doctrine"*
 *After Campbell*, 7 COMM . L. & POL 'Y  7, 325 (2002) ........................... 23

## PRELIMINARY STATEMENT

**"'Thou shalt not steal.' has been an admonition followed since the dawn of civilization. Unfortunately, in the modern world of business this admonition is not always followed. Indeed, the defendants in this action for copyright infringement would have this court believe that stealing is rampant in the music business and, for that reason, their conduct here should be excused. The conduct of the defendants herein, however, violates not only the Seventh Commandment, but also the copyright laws of this country."**

*Grand Upright Music Ltd. v. Warner Bros. Records, Inc.*, 780 F.Supp. 182 (1991) (Judge Kevin Thomas Duffy)

Such was the introduction to a case that forever changed the course of the popular music industry. *Grand Upright* put an end to the widespread practice by rap artists of unlicensed "sampling," the practice of taking pre-existing sound recordings and incorporating them into new songs. While the practice of music sampling is arguably transformative in that it makes something novel out of pre-existing recordings for the benefit of new audiences, the fact remains that for over a quarter of century, federal law has required that secondary users obtain a license from the original artists they sample.

The case at bar presents the Court with a valuable opportunity to set the standard in the news reporting industry; to protect the copyrighted works of professional photojournalists once and for all. Defendants would have this Court believe that, pursuant to the doctrine of Fair Use, they have an unfettered right to "sample" photographs that were previously published by competing news organizations and incorporate them into their own second-hand news reports. If their defense succeeds, secondary news publishers will be granted a blanket license to exploit the work of photojournalists at will, for whatever use they deem necessary provided it can be characterized as news reporting.

Defendants' attempt to claim fair use on the generic basis of "newsworthiness" should be dismissed outright.  Defendants readily admit that they are for-profit news organizations which used commercial advertisements to exploit Plaintiff's work without his authorization.   Given that Defendants are purveyors of news content who occupy the same market as the *New York Post* (where Plaintiff's work was initially published), they cannot plausibly claim that they should be entitled to a free ride where Defendants' direct competitors are obliged to pay licensing fees.

The Fair Use doctrine is the only defense of any substance that Defendants have invoked.  The remainder of Defendants' position is based on discovery objections to Plaintiff's use of *public record* documents.  Indeed, the crux of Defendants' opposition (and cross-motion for summary judgment) is that Plaintiff did not produce a hard copy of his copyright registration certificate before the end of fact discovery.  However, the documentary evidence that Plaintiff relies on in his principal motion is either attached to the Amended Complaint or is incorporated by reference into the pleading.

Indeed, Defendants were placed on notice of Plaintiff's copyright registration number almost *16 months ago* when Plaintiff filed his initial complaint on July 4, 2016.  *See* Docket ("Dkt.") # 1, Complaint, ¶ 20.  So Defendants' lead argument that the Court should dismiss Plaintiff's claims on grounds that Defendants have been "ambushed" by evidence of a publically available copyright registration is objectively unreasonable.

Equally absurd is Defendants' argument that Plaintiff's infringement claim should be dismissed because there is no evidence on the record of actual damages.   As a matter of black letter law, Plaintiff has no obligation to proffer evidence of actual damages in a case where statutory damages are available.

Beyond Defendants' baseless discovery objections, there is a glaring lack of substance to Defendants' opposition (and cross-motion) on the issue of liability.  They fail to produce any evidence whatsoever to rebut the legal presumption of validity which is accorded to Plaintiff's copyright registration.  Because Defendants shoulder the burden of proving invalidity, it is *their* responsibility to present evidence showing that either: (a) the Subject Photograph is *not* on deposit with the U.S. Copyright Office; or (b) that Plaintiff somehow defrauded the U.S. Copyright Office.  Despite having almost 16 months to contact the Copyright Office and request certified copies of the deposits on record, Defendants have completely abandoned their defense of invalidity.

Defendants have also abandoned every other affirmative defense to liability interposed in their Answer to the Amended Complaint by failing to oppose their dismissal.  Accordingly, Plaintiff's motion for partial summary judgment against Defendants for copyright infringement should be granted.

Finally, with respect to Plaintiff's DMCA claim under section 1202 for removal of copyright management information, the record shows that Zazoom's Video [Dkt. # 69, Charlier Declaration, Ex. D] displays a full-color, full-scale reproduction of the Subject Photograph for six seconds [at 0:11-17] <u>without</u> any attribution or credit to John Mantel. Defendants were clearly aware of the attribution because they also posted a one-second screen shot of the *New York Post* article which displayed the photograph [*id.* at 0:40]. Defendant Zazoom, which produced the Video, is a sophisticated purveyor of copyrighted materials.  The evidence on the record, taken as a whole, creates a strong inference that Zazoom had the requisite intent to enable infringement. Accordingly, Defendants' motion to dismiss the second count should be denied.

3

## UNDISPUTED FACTS

Mantel's photographs have appeared in the *New York Post* and *Daily Mail.* [Pl. 56.1,[1] ¶ 2; Mantel Declaration ("Declr.") ¶ 2; Def. 56.1[2], ¶ 2]

On May 8, 2016, Mantel photographed a woman named Yiru Sun who canceled her wedding to help needy children and their families (the "Subject Photograph"). [Pl. 56.1, ¶ 3; Mantel Declr. ¶ 3, Ex. A; Def. 56.1, ¶ 3] At the time the Subject Photograph was created, Yiru Sun was newsworthy because of the cancellation of her wedding and her decision to meet with needy children. [Pl. 56.1, ¶ 5; Mantel Declr., ¶ 5; Def. 56.1, ¶ 5]

On May 8, 2016, the *New York Post* ran an article that featured the Subject Photograph on its web edition with the headline "Bride won't sign prenup, throws 'wedding party' for poor kids instead." [Pl. 56.1, ¶ 7; Mantel Declr. ¶ 7, Ex. B; Def. 56.1, ¶ 7]  In the *New York Post* article, Mantel's name was featured in a gutter credit attributing him as the photographer of the Subject Photograph. [Pl. 56.1, ¶ 8; Mantel Declr. ¶ 8, Ex. B; Def. 56.1, ¶ 8]

Mantel is in possession of a certificate of registration from the U.S. Copyright Office, bearing registration number VA 2-007-059, with effective registration date of June 16, 2016 (the "056 Registration"). [Pl. 56.1, ¶ 10; Mantel Declr. ¶ 10, Ex. C; Def. 56.1, ¶ 10].  The website maintained by the U.S. Copyright Office contains a public record of the 056 Registration. [Pl. 56.1, ¶ 11; Mantel Declr. ¶ 11, Ex. D; Def. 56.1, ¶ 11] Mantel obtained the 056 Registration within five years after first publication of the Subject Photograph.  [Pl. 56.1, ¶ 13; Mantel Declr. ¶ 13; Def. 56.1, ¶ 13]

---

[1] "Pl. 56.1" refers to Dkt. #63, Plaintiff's Statement Pursuant to Local Rule 56.1.

[2] "Def. 56.1" refers to Dkt. # 71, Defendant's Statement Pursuant to Fed. R. Civ. P. 56.

Defendants are all for-profit entities [Def. 56.1, ¶¶ 14, 21, 28, 35, 42, 49, 56, 63, 70, 77, 84] which publish news content via their respective websites [Def. 56.1, ¶¶ 16, 23, 30, 37, 44, 51, 58, 65, 72, 79]

Defendants actually copied the Subject Photograph which they concede is incorporated into a video produced by Zazoom (the "Video"). *See* Gannett [Def. 56.1, ¶ 18] ("The Video contains an excerpt from the *New York Post* article dated May 8, 2016, which displays . . . the Subject Photograph . . ."); Hearst Stations [*Id.* at. ¶ 25] (same); Hearst Newspapers [*Id.* at ¶ 32] (same); Toshiba [*Id.* at ¶ 39] (same); Lenova [*Id.* at ¶ 46] (same); Gannett Satellite [*Id.* at ¶ 53] (same); Verizon [*Id.* at ¶ 60] (Same); Tegna [*Id.* at ¶ 67] (same); Microsoft [*Id.* at ¶ 74] (same); AOL [*Id.* at ¶ 81]; *see also* Def. 56.1, ¶¶ 95-97.  Commercial advertisements appear on the same webpages where Defendants display the Subject Photograph. [Def. 56.1, ¶¶ 19, 26, 33, 40, 54, 61, 68, 75, 82].

Defendants did not have a license to publish the Subject Photograph. *See* Gannett [Def. 56.1, ¶ 20] (admitting it "did not have a license to publish the Subject Photograph"); Hearst Stations [*Id.* at. ¶ 27] (same); Hearst Newspapers [*Id.* at ¶ 34] (same); Toshiba [*Id.* at ¶ 41] (same); Lenova [*Id.* at ¶ 48] (same); Gannett Satellite [*Id.* at ¶ 55] (same); Verizon [*Id.* at ¶ 62] (Same); Tegna [*Id.* at ¶ 69] (same); Microsoft [*Id.* at ¶ 76] (same); AOL [*Id.* at ¶ 83] (same); Zazoom [*Id.* at ¶ 87] (same).

Defendant Zazoom is a sophisticated purveyor of copyrighted material, including photographs.  [Def. 56.1, ¶¶ 88-92].  Defendants removed the Video from their websites after this lawsuit was filed.  [Id. at ¶¶ 103-105]

<u>ARGUMENT</u>

**POINT I:  THE UNDISPUTED FACTS SHOW THAT PLAINTIFF HAS
ESTABLISHED THE ELEMENTS OF HIS COPYRIGHT
INFRINGEMENT CLAIM**

To establish a claim of copyright infringement, plaintiff must show two elements:

(1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted

work.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Castle Rock*

*Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998).  As set forth

below, Plaintiff has clearly satisfied both elements of his claim and Defendants have

failed to produce any evidence to rebut the material facts underlying each element.

**A.     PLAINTIFF HAS SATISFIED HIS BURDEN OF PROVING HIS POSSESSION OF A
VALID COPYRIGHT REGISTRATION FOR THE SUBJECT PHOTOGRAPH**

Pursuant to 17 U.S.C. § 410(c), a certificate of registration from the U.S.

Copyright Office, if timely obtained, "constitute[s] *prima facie* evidence of the validity of

the copyright . . ." 17 U.S.C. § 410(c).  A certificate of copyright registration is *prima*

*facie* evidence of both valid ownership of copyright and originality.  *Scholz Design, Inc.*

*v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).  To be timely, a

certificate of registration must be obtained "before or within five years after first

publication" of a work.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413

F.3d 257 (2d Cir. 2005).  Thus, "[p]ossession of a registration certificate creates a

rebuttable presumption that the work in question is copyrightable." *Whimsicality, Inc. v.*

*Rubie's Costume Co. Inc.*, 891 F.2d 452, 455 (2d Cir. 1989).  A party's "proffer of its

certificate of copyright registration thus shifts to [the opposing party] the burden of

proving the invalidity of the copyright." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d

Cir.), *cert. denied*, 522 U.S. 908 (1997).

Here, Defendants admit that Mantel is in possession of a certificate of registration from the U.S. Copyright Office, bearing registration number VA 2-007-059, with effective registration date of June 16, 2016 (the "059 Registration") [Def. 56.1, ¶¶ 10, 13]. Defendants also admit that the website maintained by the U.S. Copyright Office contains a public record of the 059 Registration. [Def. 56.1, ¶¶ 11] Defendants further admit that the 059 Registration was obtained "before or within five years after first publication" of the Subject Photograph. [Def. 56.1, ¶ 13]

Accordingly, as a matter of law, Defendants have conceded that a rebuttable presumption exists that the Subject Photograph is copyrightable in terms of both validity and originality. *Whimsicality*, 891 F.2d at 455; *Scholz Design*, 691 F.3d at 186. Defendants have also therefore conceded that the evidentiary burden rests on Defendants to present hard evidence to rebut the validity of Plaintiff's copyright registration. *Fonar*, 105 F.3d at 104.

### B.   DEFENDANTS HAVE FAILED TO PROFFER FACTUAL EVIDENCE TO REBUT THE PRESUMPTIVE VALIDITY OF THE 059 REGISTRATION

To contest validity of the 059 Registration, Defendants have failed to produce any evidence whatsoever. Instead, they raise three legal arguments: First, they contend that the 059 Registration, which was incorporated by reference into the initial and amended pleadings, should be precluded from evidence because a hard copy of this public record document was not produced by Plaintiff before the discovery cut-off. Second, they argue (without a shred of legal authority) that the 059 Registration is facially defective because it does not specifically identify the title of the Subject Photograph. Third, they argue that a jury should decide whether the Subject Photograph is on deposit with the U.S. Copyright Office. As explained below, Defendants' arguments fail as a matter of law.

7

1.  **As a Matter of Law, the 059 Registration is Incorporated by Reference into the Complaint and, In Any Event, is a Matter of Public Record**

The crux of Defendants' argument in opposition to (and support of) summary judgment is purely technical.  Defendants argue that summary judgment should be denied because Plaintiff did not produce a hard copy of the 059 Registration before the discovery deadline. [Def. Memo,[3] pp. 11-13; 19 of 34].  Defendants' argument is untenable on three grounds.

<u>First</u>, the 059 Registration was incorporated by reference into the initial *and* amended complaint [Dkt. #1, Complaint at ¶ 20; Dkt. # 21, Amended Complaint at ¶ 20]. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").  Defendants have therefore been on notice of the 059 Registration for *almost 16 months* and cannot plausibly complain that they have been "ambushed."

<u>Second</u>, the 059 Registration, including application and deposit information, is by Defendants' own admission a matter of public record and equally accessible to Defendants.  [Def. 56.1, ¶ 11]  "It is well-established that discovery need not be required of documents of public record which are equally accessible to all parties." *Securities and Exchange Commission v. Samuel H. Sloan & Co.*, 369 F.Supp. 994, 995 (S.D.N.Y.1973); *see also S.E.C. v. Strauss*, No. 09-civ-4150, 2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009) ("Courts have declined to compel production of documents in the hands of one party when the material is equally available to the other party from another source."); *Baum v.*

---

[3] "Def. Memo" shall refer to Dkt. #70, Defendant's Memorandum of Law (I) In support of Defendants' Motion for Summary Judgment; and (II) Opposition to Plaintiff's Motion for Partial Summary Judgment.

*Village of Chittenango*, 218 F.R.D. 36, 40–41 (N.D.N.Y.2003)  ("[C]ompelling discovery from another is unnecessary when the documents sought are equally accessible to all.").[4]

      <u>Third</u>, the Court may take judicial notice of the 059 Registration at any time.  *See, e.g., Island Software & Computer Serv. Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (district courts are entitled to take judicial notice of federal copyright registrations, as published in the Copyright Office's registry); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F.Supp.2d 167, 188 (S.D.N.Y. 2009) (same).[5]

## 2. On its Face, the 059 Registration Meets ALL Legal Requirements for Group Registrations of Photographs

      The Register of Copyrights has authority to permit "a single registration for a group of related works." 17 U.S.C. § 408(c)(1).  "The [U.S. Copyright Office] provides that a single registration can effectively cover a group of published photographs if the following requirements are met: '(a) all the photographs are by the same photographer ...; (b) all the photographs are published in the same calendar year; and (c) all the photographs have the same copyright claimant.'"  *Fameflynet, Inc. v The Shoshanna Collection, LLC*, 16 Civ. 7645 (RWS), 2017 WL 4402568 at *2 (S.D.N.Y. October 2, 2017) *quoting* U.S. Copyright Office, Group Registration of Published Photographs, FL-124 (2012).

---

[4] "This observation is consistent with the federal rule governing the production of documents and things, Fed.R.Civ.P. 34, which permits a party to request from another party, limited to those documents and things "which are in the possession, custody, or control of the party upon whom the request is served." *Krause v. Buffalo and Erie County Workforce Development Consortium, Inc.*, 425 F.Supp.2d 352, 375 (W.D.N.Y. 2006) (citing Fed.R.Civ.P. 34(a)(1)).

[5] For the avoidance of any doubt as to admissibility, Plaintiff has concurrently requested the Court to take judicial notice of the copyright registration at issue in this lawsuit.

Here, Plaintiff's copyright registration clearly meets the legal requirements.  First, the 059 Registration provides that all of the photographs are authored by Mantel.  [Pl. 56.1, ¶¶ 10-12; Mantel Declr., Ex. C]  Second, all the photographs included in the 059 Registration were published in the same year, between January 5, 2016 and June 15, 2016 [*Id.*].  Third, the 059 Registration provides that Mantel is the copyright claimant to all of the photographs  [*Id.*].   Accordingly, Defendants have no legal basis to contend that the 059 Registration is facially defective or invalid.

Although Defendants have not alleged (nor provided any evidence) that the 059 Registration fails to meet the requirements of the Copyright Office, they nevertheless claim that the 059 Registration is facially defective.  Without providing any authority from caselaw or pointing to *any* Copyright Office regulations, Defendants argue that "the 059 Registration contains no details about names or dates of each photograph, their subject matter, when each was individually taken or published, or any other identifying information."  [Def. Memo, p. 20 of 34].  As a result, Defendants conclude that the "certificate alone is insufficient to establish that the Photograph is subject to a valid registration."  [Def. Memo, p. 19 of 34].

As noted, Defendants have failed to provide *any* authority to support its position. Regardless, the weight of Circuit authority  - and Professor Nimmer - have rejected Defendants' argument.  *See, e.g.*,  *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 685 (9th Cir. 2014) (holding that plaintiff - a photograph agency -  successfully registered the copyright both to its collections and to the individual images contained therein even though the titles of the individual works were not specified on the face of the registration: "[t]he procedure applied for over three decades by the

10

Register of Copyrights to registration by stock photo agencies complied with the statutory requirements and did not violate any clear requirement to list individual authors and titles of the components within the work."); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 598 (4th Cir. 2013) (rejecting the argument that a copyright applicant must identify the titles of individual photographs which comprise a collective work registration); *Szabo v. Errisson*, 68 F.3d 940, 943 (5th Cir. 1995), *abrogated on other grounds by Reed Elsevier, Inv. v. Muchnick*, 559 U.S. 154 (2010) ("when one copyrights a collection, the copyright extends to each individual work in the collection even though the names of each work are not expressly listed in the copyright registration"); *see also* Melville B. Nimmer & David Nimmer, 2 NIMMER ON COPYRIGHT § 7.16(B)(5)(c) (2013) (stating that the registration of a collective work should effect registration of the component works, even if the individual titles are not listed in the registration).

### 3. Defendants Have Failed to Produce ANY Evidence to Prove that the Subject Photograph is Not On Deposit with the 059 Registration

In a last ditch effort to contest validity, Defendants argue that the issue of whether the Subject Photograph is on deposit with the Copyright Office is a matter for the jury to decide.  [Def. Mem, p. 20 of 34]  This argument fails on several counts.

First, Defendants have already conceded that Mantel is in possession of the 059 Registration which, along with the application and deposit information, is a matter of public record and equally accessible to Defendants.  [Def. 56.1, ¶¶ 10-11]  To show a genuine dispute of fact concerning the deposit of the Subject Photograph, the non-moving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir.

1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).

"Hard evidence" on this issue could only consist of certified documents obtained from the U.S. Copyright Office showing that the Subject Photograph is not on deposit. Yet, despite the passage of *almost 16 months* since Defendants were placed on notice of the 056 Registration [Dkt. #1, Complaint, ¶ 20], Defendants have failed to gather "hard evidence" from the U.S. Copyright Office to support *their claim* of invalidity.

Defendants mistakenly believe that it is Plaintiff who shoulders the burden (financial and otherwise) to obtain certified copies of deposits from the U.S. Copyright Office.  However, as a matter of law, it is the Defendants' "heavy burden" alone to prove invalidity of the 056 Registration.  *Fameflynet*, 2017 WL 4402568 at *3; *Fonar*, 105 F.3d 99 at 104.  "[P]arties are generally responsible for their own costs, and their adversaries are not obligated to finance their litigation." *Baum*, 218 F.R.D. 36 at 41.  In the absence of hard evidence obtained from the U.S. Copyright Office, Defendants cannot plausibly rebut the validity of the 056 Registration.  *See* Fed.R.Civ.P. 56(e)(2) (providing that "If a party fails to properly support an assertion of fact . . . as required by Rule 56(c), the court may: (2) consider the fact undisputed for purposes of the motion.").

Second, Defendants challenge Mantel's sworn declaration [Dkt.# 66 at ¶ 12] that he caused the Subject Photograph to be deposited with the U.S. Copyright Office in conjunction with the 059 Registration.  [Def. Memo, pp. 20 of 34].  Defendants want the opportunity to cross-examine Mantel before a jury.  [*Id.*]  Yet, Defendants already had the opportunity to depose Mantel and declined to do so.

Having failed to gather hard evidence from the U.S. Copyright Office and having failed to take Mantel's deposition, Defendants offer nothing more than their own biased speculation as to Mantel's credibility.  However, "[c]onclusory allegations, conjecture, and speculation," are insufficient to create a genuinely disputed fact.  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  Accordingly, no issue of genuine fact exists regarding Mantel's credibility or whether he actually deposited the Subject Photograph with the U.S. Copyright Office.

### 4.  Defendants Have Failed to Allege That Plaintiff Committed Fraud on the Copyright Office or Otherwise Misrepresented Facts in His Application

Courts in this district have held that where a copyright infringement defendant seeks to invalidate a registration, the defendant <u>must</u> allege that the plaintiff committed fraud on the Copyright Office.  In *Fameflynet, Inc. v The Shoshanna Collection, LLC*, 16 Civ. 7645 (RWS), 2017 WL 4402568 at *2 (S.D.N.Y. October 2, 2017), Judge Sweet granted summary judgment in plaintiff's favor on the issue of liability for copyright infringement.  After noting that Defendants bear a "heavy burden" of demonstrating the invalidity of copyright, 2017 WL 4402568 at *3, the Court stated as follows:

> The Second Circuit has concluded that "[t]he Copyright Office has expertise to determine in the first instance whether a filer has complied with the technical requirements for a registration certificate," and that "under this doctrine, the presumption may be overcome only by 'proof of deliberate misrepresentation.'" *Fonar Corp.*, 105 F.3d at 105 (citing *Whimsicality, Inc.*, 891 F.2d at 455 ). To prevail on an assertion of fraud the Defendants must demonstrate that "(i) the copyright application contains one or more factual misrepresentations, (ii) the inaccuracies were 'willful or deliberate,' and (iii) the Copyright Office relied on the misrepresentations." *Id.*  (citing *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989).

> The *Fonar* Court found that the defendant did not overcome the presumption of the registration's validity where it made no allegations that the plaintiff defrauded or made deliberate misrepresentations to the U.S. Copyright Office.  *Fonar Corp.*, 105 F.3d at 105. **Thus, where Defendants have not alleged that plaintiff has**

13

**either defrauded or made any deliberate misrepresentation to the Copyright Office, "the presumption of the Registration's validity stands, and the Plaintiff's Registration establishes its ownership of the . . . Photos."**

2017 WL 4402568 at *3 (boldface added).

Here, Defendants have made no allegations of any kind that Plaintiff either defrauded or made any deliberate misrepresentation to the Copyright Office. For this reason alone, and consistent with Second Circuit law, Plaintiff's registration certificate establishes his valid ownership of the Subject Photograph.

In sum, because Defendants have failed to show that any genuine issue of fact exists concerning the validity of the 056 Registration, the first element of Plaintiff's copyright infringement has been satisfied.

**C.   THERE IS NO FACTUAL DISPUTE CONCERNING THE SECOND ELEMENT BECAUSE DEFENDANTS ADMIT THEY ACTUALLY COPIED THE SUBJECT PHOTOGRAPH WITHOUT AUTHORIZATION**

With respect to the second element of Plaintiff's copyright infringement claim, there is no genuine issue of material fact in dispute because Defendants readily admit that they: (1) actually copied the Subject Photograph; (2) without Plaintiff's consent or authorization.

<u>First</u>, all of the Defendants admit that they actually copied the Subject Photograph. In the Declaration of Steve Charlier, the CEO of defendant Zazoom, Mr. Charlier declares that:

> "On May 8, 2016, Zazoom created a short news video about Ms. Sun's charity lunch" and "[t]he Video contained an excerpt from the *New York Post* article about the lunch including a photo of Ms. Sun and several children, which I understand is at issue in this case (the "Photograph")." [Dkt. #68, Charlier Declr. ¶ 5]

14

The remaining Defendants also admit that they actually copied the Subject Photograph which they concede is incorporated into the Zazoom Video:  Gannett [Def. 56.1, ¶ 18] ("The Video contains an excerpt from the *New York Post* article dated May 8, 2016, which displays . . . the Subject Photograph . . ."); Hearst Stations [*Id.* at. ¶ 25] (same); Hearst Newspapers [*Id.* at ¶ 32] (same); Toshiba [*Id.* at ¶ 39] (same); Lenova [*Id.* at ¶ 46] (same); Gannett Satellite [*Id.* at ¶ 53] (same); Verizon [*Id.* at ¶ 60] (Same); Tegna [*Id.* at ¶ 67] (same); Microsoft [*Id.* at ¶ 74] (same); AOL [*Id.* at ¶ 81]; *see also* Def. 56.1, ¶¶ 95-97.  As such, there is no issue of fact in dispute as to whether Defendants actually copied the Subject Photograph.

Second, there is no genuine issue of fact in dispute with regards to whether Defendants had authorization to use the Subject Photograph.  Defendants all concede that no license was granted.  *See* Gannett [Def. 56.1, ¶ 20] (admitting it "did not have a license to publish the Subject Photograph"); Hearst Stations [*Id.* at. ¶ 27] (same); Hearst Newspapers [*Id.* at ¶ 34] (same); Toshiba [*Id.* at ¶ 41] (same); Lenova [*Id.* at ¶ 48] (same); Gannett Satellite [*Id.* at ¶ 55] (same); Verizon [*Id.* at ¶ 62] (Same); Tegna [*Id.* at ¶ 69] (same); Microsoft [*Id.* at ¶ 76] (same); AOL [*Id.* at ¶ 83]; Zazoom [*Id.* at ¶ 87].

## POINT II: THE COURT MAY GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY WITHOUT REGARD TO PROOF OF DAMAGES

Defendants argue that the Court should dismiss Plaintiff's claim for copyright infringement because there is no evidence on the record of actual damages.  [Def. Memo, p. 11 of 34] (arguing that claims for damages are an "essential element" of Mantel's copyright claim); [*Id.*, p. 18 of 34] (arguing that "Defendants oppose Mantel's motion for partial summary judgment on copyright liability on the grounds that he . . . has no evidence of actual damages or lost profits.")

15

This argument fails on two grounds: (1) as a matter of law, damages are <u>not</u> an element of a copyright infringement claim and the Court may find liability without regard to proof of actual damages or lost profits; and (2) as a matter of law, statutory damages may be awarded in a copyright infringement claim without any proof of actual damages.

**A.    PLAINTIFF IS <u>NOT</u> REQUIRED TO SHOW PROOF OF ACTUAL DAMAGES FOR THE COURT TO ENTER JUDGMENT AGAINST DEFENDANTS ON LIABILITY**

As explained by the Second Circuit in *On Davis v. The Gap, Inc.*, 246 F.3d 152, 158 (2d Cir. 2001):

> The existence of damages suffered is not an essential element of a claim for copyright infringement. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (to establish a *prima facie* case of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original"); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.01, at 13–6 *159* (1999) ( "Notably absent from this formulation of the *prima facie* case is damage or any harm to [the] plaintiff resulting from the infringement."). The owner of a copyright is thus entitled to prevail in a claim for declaratory judgment of infringement without showing entitlement to monetary relief.

Accordingly, despite Defendants' arguments to the contrary, the Court may enter judgment against Defendants on the issue of liability regardless of whether proof exists of actual damages.

**B.    IN COPYRIGHT INFRINGEMENT ACTIONS, COURTS ROUTINELY AWARD STATUTORY DAMAGES WITHOUT ANY EVIDENCE OF ACTUAL DAMAGES.**

"Regardless of the lack of quantifiable evidence concerning the extent of plaintiff's losses, 'the failure to establish actual damages does not impair this Court's ability to devise a proper statutory award.'" *Marshall v. Marshall*, 2012 WL 1079550, *26 (E.D.N.Y. March 30, 2012), *quoting Tu v. TAD System Technology, Inc.*, 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009); *see also Entral Group Int'l LLC v. Honey Cafe on*

*5th, Inc.,* 2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) (awarding $150,000 for defendants' willful infringement although neither the plaintiff's losses nor the defendants' profits were established); *Van Der Zee v. Greenidge*, 2006 WL 44020, *2 (S.D.N.Y. Jan. 6, 2006) ("Absent additional evidence of profits lost and repeated by the parties, this court must rely principally on defendants' willful conduct in determining damages."); *Eastern America Trio Products, Inc. v. Tang Electronic Corp.,* 97 F.Supp.2d 395, 419 (S.D.N.Y. 2000) (awarding statutory damages where court found willfulness, blatant disregard of copyright notice, and need for deterrence).[6]

Here, Plaintiff's copyright infringement claim qualifies for statutory damages under 17 U.S.C. § 504(a).  As such, upon a finding of Defendants' reckless disregard for Mantel's rights, the Court has the statutory authority to award Mantel between $750 and $150,000 regardless of whether the record contains proof of Mantel's actual losses or Defendants' illicit gains. *See* 17 U.S.C. § 504(c).

## POINT III:   DEFENDANTS' GENERIC CLAIM OF "FAIR USE" FAILS

To establish their defense of Fair Use, Defendants primarily argue that their unauthorized commercial exploitation of Mantel's copyrighted expression was "fair" because the subject matter of Mantel's photograph was newsworthy.   However, under Second Circuit law, "[a] news organization . . .  may not freely copy creative expression solely because the expression itself is newsworthy." *Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014); *see also Harper & Row*,

---

[6] *Accord F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952) ("Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy [of discouraging wrongful conduct].")

471 U.S. at 557 ("The promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report' of the [work].")

Plaintiff responds to Defendants' arguments on Fair Use as follows:

A.   FACTOR #1:  NEWS PUBLISHERS' SECONDARY USE OF PHOTOGRAPHS FIRST PUBLISHED BY A COMPETING NEWS REPORT IS NEVER TRANSFORMATIVE

With respect to purpose and character of use, Defendants argue that they "used the Photograph in connection with news reporting on a notable local event and, in the process, transformed the Photograph beyond its original context and meaning." [Def. Memo, p. 22 of 34.]

Of course, Defendants' secondary use has not changed the context or meaning of the Subject Photograph; they have only changed the format in which it is displayed. As illustrated below, Mantel's Photograph was created for the express purpose of news reporting [Pl. 56.1, ¶¶ 5-6, 9]; was first published in the *New York Post* for purposes of news reporting [*Id.* at ¶ 5]; and was then re-published by Defendants for the exact same purpose: news reporting. [Def. *56.,* ¶¶ 93-97]

NON-TRANSFORMATIVE PURPOSE AND USE:

|  | Subject Photograph | *NY Post* Article | Zazoom Video |
|---|---|---|---|
| **Purpose for Creation** | News Reporting | News Reporting | News Reporting |
| **Character of Use** | Commercial | Commercial | Commercial |
|  |  |  |  |

18

1.  **Defendants Fail to Explain How Their Secondary Use is Transformative and Fail to Cite ANY Caselaw Authority in the Context of News Reporting**

Defendants have failed to explain how the Defendants, who are second-hand news publishers, can possibly transform a photograph first published for the same exact purpose by a competing news publisher, i.e. *The New York Post*, *Daily News*.

Moreover, there is no transformation of the Subject Photograph itself.  For example, Defendants have not altered the color, shape, contrast, tint or composition of Mantel's work.  The image as it appears on Defendants' websites and in the Zazoom Video is completely intact – a wholesale duplication.  [Dkt. # 66, Mantel Decl., Exs. F-O; Dkt. #68; Charlier Declr., Ex. D].  *See McClatchey v. Associated Press*, No. 3:05-CV-145, 2007 WL 776103,  at *3 (W.D. Pa. Mar. 9, 2007) (no fair use where defendant did not change the photograph in any way, but merely copied it and made it available to its subscribers without paying the usual licensing fees).

Rather than modifying the Photograph itself, Defendants have simply changed the format in which it appears by cutting and pasting a full-color, full-size copy of Mantel's work into the Video.  [Dkt. #68, Ex. D to Charlier Declr. at 0:11-17]  As a matter of law, changing the format of an otherwise unaltered image is not transformative.  *See Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (in the context of news reporting, "use of copyrighted material that merely repackages or republishes the original is unlikely to be deemed a fair use and a change of format, though useful, is not transformative.") (internal quotations omitted).

More importantly, Defendants have failed to cite a single case in the history of U.S. Copyright law where a federal court determined that a secondary news publisher could claim fair use of photographs that were first published by competing news

organizations.  Defendants' analysis of the first factor primarily relies on *Bill Graham Archives v. Dorling Kindersley, Ltd.*, 448 F.3d 605 (2d Cir. 2006), where the images at issue were historical concert posters used as miniature *thumbnail* images in a coffee table book which displayed the posters in chronological order.  The case at bar, in contrast, involves for-profit news organizations which claim that they can freely re-publish full-scale, full-color reproductions of a copyrighted photograph that was first published by competing news organizations just days earlier.

Defendants cite no cases whatsoever to support their defense of fair use in the news reporting context.  In juxtaposition, Plaintiff cites to scores of decisions where federal courts determined that news organizations cannot appropriate images from other news organizations or photojournalists for the same purpose and use.  *See, e.g., Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 628–29 (9th Cir. 2003), *overruled on other grounds as stated in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) (per curiam) (minor changes, such as placing "voice-overs" on video clips, do not "necessarily transform a work."); *Monge v. Maya Magazine, Inc.*, 688 F.3d 1164 (9th Cir. 2012) ("Each of the individual images was reproduced essentially in its entirety; neither minor cropping nor the inclusion of headlines or captions transformed the copyrighted works.  The reasoning regarding voice-overs from *Elvis Presley Enterprises* applies with equal vigor to headlines and captions over still images"); *Murphy v. Millenium Radio Group LLC*, 650 F.3d 295, 306 (3rd Cir. 2011) (disallowing copying of unaltered image because there was "no meaningful distinction between the purpose and character" of the creator's use and the infringer's use of reporting news); *L.A. News Serv. v. KCAL–TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) (a news

station's broadcast of an extraordinarily timely news segment concerning ongoing riots related to the Rodney King beating was held unfair: Even though the news station "apparently ran its own voice-over, it does not appear to have added anything new or transformative to what made the [ ] work valuable— a clear, visual recording of the beating itself."); *compare Psihoyos v. National Examiner*, No. 97 Civ. 7624(JSM), 1998 WL 336655, at *6 (S.D.N.Y. June 22, 1998) (rejecting fair use where the National Examiner used a copyrighted photograph in a feature story about a Cadillac and claimed that its use was transformative because the photo was used in news reporting.  The court stated that "the mere fact that the photo depicts a newsworthy item does not justify copying it entirely without permission." *Id.*  at *4) *with Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 21 (1st Cir. 2000) (finding the unauthorized use of newsworthy photographs fair so long as the photographs were <u>not</u> originally intended to be news).

The S.D.N.Y. case of *Associated Press v. Meltwater* is instructive.  There, Judge Cote addressed the question of whether defendant-Meltwater, an "internet media monitoring service", could claim fair use by compiling excerpts from news articles first published by the Associated Press and redistributing them to subscribers.  After finding that Meltwater was the "on-line equivalent to the traditional news clipping service," the court rejected the fair use defense because "[t]here is nothing transformative about that function." 931 F.Supp.2d at 556, *citing Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 199 (3d Cir. 2003) (clip previews of movies); *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data*, 166 F.3d 65, 72 (2d Cir. 1999)  (abstracts of news articles); *Infinity Broadcast Corp.* v. Kirkwood, 150 F.3d 104, 108 (2d Cir. 1998)  (radio monitoring service); *Los Angeles News Service v. Tullo*, 973 F.2d 791, 797, 799 (9th Cir.

1992)  (video news clipping service.); *Pacific and Southern Co., Inc. v. Duncan*, 744 F.2d
1490, 1496 (11th Cir. 1984) (TV news clipping service).

Based on the undisputed facts in this record, Zazoom is just like Meltwater
because its function is to provide a news clipping service to paid subscribers (Zazoom's
co-defendants).  The CEO of Defendant Zazoom, Mr. Charlier, describes his company as
a "creator, producer and mutli-platform distributor of video intended for internet and
mobile-web audience." [Dkt. #69, Charlier Declr., ¶ 2]   Charlier contends that Zazoom
created a short news videos in this case which "combined excerpts from local coverage
together with additional information and our own original commentary of the story." [*Id.*
at ¶ 3].  While Plaintiff disputes that the Zazoom Video includes any "original
commentary," there is no dispute that Zazoom compiles together newsworthy
information and photographs from competing news organizations and republishes them
for profit – just like the infringing Meltwater.  [Def. 56.1, ¶¶ 94-96]

## 2.   Defendants' Secondary Use of the Subject Photograph Does NOT Contain Transformative "Commentary" or Criticism

The voice-over featured in the Zazoom Video is not actually "commentary" as
that term is understood in the context of news reporting because it is not editorial in
nature, i.e., does not offer an *opinion* or take a position about some political controversy.
Rather, the voice over is merely descriptive; Zazoom's reporter is explaining to audiences
what happened at a newsworthy event that was previously reported by competing news
organizations.

Even if the Video does contain what Charlier describes as "commentary" about
the event depicted in the Subject Photograph, there is no commentary whatsoever
directed at the *artistic merits* of the image itself, e.g., lighting, shading, positioning of the

subject matter, or selection of camera equipment.  *See Psihoyos*, 1998 WL 336655 at *4-5 (finding that use of an entire photograph might have been acceptable if the purpose of the defendant's article was to comment on plaintiff's photography, but because the National Examiner had reported on the subject of the photograph itself, the court found that the amount of the use was designed to save defendant the trouble of creating its own photo, and thus weighed against fair use).[7]

And even giving Defendants the full benefit of the doubt, the alleged commentary provided by Zazoom's voice-over was "minimally transformative." *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176  (2012) ("[Defendant]'s use - wholesale copying sprinkled with written commentary— was at best minimally transformative.").

### 3.   Defendants Admit that They are For-Profit Entities Who Used Commercial Advertisements to Exploit Mantel's Work

Defendants argue that their admitted status as for-profit entities [Def. 56.1, ¶¶ 14, 21, 28, 35, 42, 49, 56, 63, 70, 77, 84] is not dispositive of the first factor [Def. Memo, p. 24 of 34].  Nevertheless, Defendants' for-profit status weighs against them where "the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper v. Row*, 471 U.S. at 562.   This is particularly true given that Defendants' commercial use of Mantel's work for the purpose of news reporting is identical to the use intended by Mantel in the creation of the image.  *U.S. v. Am. Soc. Of Composers Authors & Publishers*, 599 F. Supp. 2d 415, 429 (S.D.N.Y. 2009).

---

[7]  *See also* Matthew D. Bunker, *Eroding Fair Use: The "Transformative Use Doctrine" After Campbell*, 7 COMM . L. & POL 'Y  7, 325 (2002) (commenting that courts favor "meta-uses" in which the user comments on the original, rather than merely on what the original depicts).

Furthermore, it is undisputed that Defendants utilized commercial advertisements *in direct connection* with exploiting Mantel's work.  [Def. 56.1, ¶¶ 19, 26, 33, 40, 54, 61, 68, 75, 82].  Accordingly, the unbridled commercial use weighs heavily against a finding of fair use.  *Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*, 10 F.Supp.2d 310, 314 (S.D.N.Y. 1998).

### 4.   The Record Shows That Defendant Zazoom Acted in Bad Faith (or in the Absence of Good Faith)

Defendants argue that "there is no evidence that Defendants acted in bad faith" for failing to request a license.  [Def. Memo, p. 25 of 34]  However, Plaintiff has not argued that Defendants acted in bad faith for not seeking a license.  Rather, Plaintiff elucidates two points which demonstrate bad faith.

First, Zazoom's removal of Mantel's credit is evidence of bad faith which militates against a finding of fair use.  *See Rogers*, 960 F.2d at 309 (finding defendant's removal of copyright notice suggested bad faith which weighed against a finding of fair use).   The Video incorporates a full-scale reproduction of the Subject Photograph for six seconds [at 0:11-17] without attribution even though Zazoom knew that Mantel was the author of the Subject Photograph. [Dkt. #68, Charlier Declr., Ex. D]

Second, bad faith is also evidenced by the fact that Defendants admit to removing the infringing content from their websites after this lawsuit was filed.  [Def. 56.1, ¶¶ 103-105].  A defendant must take "reasonable steps to assure fair use before infringement," *Bridgeport Music, Inc. v.* *1166 *UMG Recordings, Inc.,* 585 F.3d 267, 279 (6th Cir. 2009), not as a "post-hoc rationalization concocted to skirt liability." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 n. 9 (6th Cir. 2007).

The undisputed fact that Defendants removed the infringing content only after being sued shows that they failed to take steps to assure fair use before creating the Video.  For example, there is no evidence on the record that Defendants consulted a copyright attorney <u>before</u> they appropriated Mantel's work.   Defendants' *ex post facto* reliance on the fair use doctrine has been manufactured by Defendants' counsel to avoid a finding of liability.  If Defendants harbored a good faith belief that their unauthorized use of the Subject Photograph was fair, then they would have stood their ground and continued to display the content even after this lawsuit was filed.

**B.    FACTOR #2: MANTEL'S SWORN TESTIMONY SHOWS THAT THE PHOTOGRAPH IS CREATIVE IN NATURE, PARTICULARLY BECAUSE IT IS A POSED PORTRAIT**

With respect to the second fair use factor, Defendants argue that the Subject Photograph is a factual work rather than creative in nature.  [Def. Memo, p. 26 of 34.] Defendants argue that because "Mantel was just one of a number of local media photographers and camera crews present at the event in question; he was merely provided with an opportunity to photograph the event, and could not have plausibly exercised the individual personal creative choices as he claims." [Def 56.1, ¶ 4].  Defendants have failed to cite any caselaw or evidence in the record to support this argument.

To determine whether the Subject Photograph is informational or creative, the Court should ultimately look to the sworn testimony of the photographer.  *See Dillion v. Does 1-10*, 2014 WL 722592, at *5 (N.D. Cal. Feb. 25, 2014) (where "the photographer submitted a declaration setting forth the precise creative choices he made in shooting and developing the headshot photo," the court concluded that the photo was creative in nature even though it served an informational purpose).

John Mantel declares that he is a professional photojournalist.  [Dkt #66, ¶ 1].[8] Further, Defendants do not dispute that Mantel's work has been published in the *New York Post* and *Daily Mail.* [Def. 56.1, ¶ 2].  Mantel declares that "i[n] creating the Subject Photograph, I exercised a personal choice in the: (a) selection of the subjects; (b) arrangement of the position of the subjects against a particular background; (c) selection of lighting and angle; (d) selection of professional camera equipment; and (e) determination of the precise time when the photograph was taken.  [Dkt. #66, ¶ 4].  The Court can also see that the Subject Photograph is a posed portrait involving several individuals taken under controlled lighting in an interior setting.  [Dkt # 66, Ex. A]

While Defendants' Rule 56.1 statement dispute Mantel's sworn testimony and cites to the declaration of Steve Charlier, Zazoom's CEO [Def. 56.1, ¶ 4], there is no evidence that Mr. Charlier was present at the time the photograph was created.  Further, there is no evidence that Charlier has any knowledge whatsoever about the art of photography.  Therefore, Mr. Charlier's testimony concerning the creation of the Subject Photograph lacks personal first-hand knowledge and should be accorded no weight. *Smeraldo v. City of Jamestown*, 2013 WL 627719, *34 (2d Cir. Feb 21, 2013) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge") (*citing* Fed.R.Civ.P. 56(c)(4)).

Finally, federal courts reject Defendants' argument that Mantel's work cannot be creative in nature because other photographers or camera crews were present.  *See, e.g*, *Time, Inc. v. Bernard Geis Assocs.,* 293 F. Supp. 130, 142-43 (S.D.N.Y. 1968)

---

[8] Courts have recognized that the work of professional photographers are generally viewed as creative in nature even where they are intended for informational purposes. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (2003) ("Photographs that are meant to be viewed by the public for informative and aesthetic purposes, such as Kelly's [a professional photographer], are generally creative in nature.")

(photographer's raw footage of the assassination of President John Kennedy was sufficiently original because of the creative effort involved in selecting type of camera, film, lens, area in which to shoot, time to film, and position of camera); *Mannion v. Coors Brewing Co*., 377 F. Supp. 2d 444, 452-53 (S.D.N.Y. 2005)  (a photographer achieves originality in timing simply by being at the right place at the right time); *SHL Imaging, Inc. v. Artisan House, Inc*., 117 F. Supp. 2d 301, 311 (S.D.N.Y. 2000) (others are free to attempt to duplicate the photograph by creating the same subject matter, but they may not copy the photograph itself, noting that copyright protection extends only to the photographer's contribution to the work); *Psihoyos*, 1998 WL 336655 at *4 (finding work was creative because of photographer's choice of background and positioning of a Cadillac).[9]  Accordingly, Mantel's photograph is creative in nature and the second factor weighs in his favor.

C.     FACTOR #3: BY DEFENDANTS' OWN ADMISSION, IT WAS NOT NECESSARY FOR DEFENDANTS TO APPROPRIATE THE SUBJECT PHOTOGRAPH BECAUSE OTHER IMAGES OF THE EVENT WERE READILY AVAILABLE

Defendants argue that full-scale republication of Mantel's entire work was necessary because it would be "unrealistic" to publish a news story about a bride without photographs.  [Def. Memo, p. 27 of 34]  However, Defendants admit that "Mantel was just one of a number of local media photographers and camera crews present at the event in question" [Def. 56.1, ¶ 4] and that "several local media outlets ran coverage of the event, including the *New York Post*, *Newsday*, and the local CBS affiliate."  [Dkt. #68,

---

[9] See also *Harper & Row, Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 557 (1985) ("It is fundamentally at odds with the scheme of copyright to accord lesser rights in those works that are of greatest importance to the public because the fact that a photograph depicts newsworthy events does not obviate its protection under copyright law").

Charlier Declr. ¶ 4]   There is no evidence in the record that any of the Defendants commissioned their own photographer or camera crew to cover the event.

Defendants have conceded that other photographs of the event were available to accompany their own reporting of the event and, yet, have abjectly failed to explain why it was necessary to appropriate Mantel's work.  Because other alternatives existed, Defendants have used more of the copyrighted work than was necessary to accomplish their purpose of reporting the event.  *See, e.g., Monge,* 688 F.3d at 1179 ("While we do not discredit [plaintiff]'s legitimate role as a news gatherer, its reporting purpose could have been served through . . . other sources rather than copyrighted photos."); *Psihoyos*, 1998 WL 336655, at *4 (Defendant "was simply using the [plaintiff's] photo to save itself the expense of obtaining its own photo.") .  Thus, by Defendants' own admission, the third factor weighs against fair use.

**D.     FACTOR #4: DEFENDANTS HAVE CONCEDED THAT A MARKET EXISTS FOR THE SUBJECT PHOTOGRAPH AND, IN ANY EVENT, MARKET HARM IS PRESUMED IN CASES INVOLVING WHOLESALE DUPLICATION OF THE WORK FOR PROFIT**

With respect to the fourth factor, Defendants argue that Plaintiff cannot show that Defendants' infringement caused market harm because of Mantel's "failure to introduce any evidence to support that there is a market for his photograph." [Def. Memo., p. 28 of 34].  However, Defendants have already conceded that Mantel's photographs have appeared in the *New York Post* and *Daily Mail* [Def. 56.1, ¶ 2].  They have also admitted that Mantel's photograph of Yuri Sun was published by the *New York Post* [Def. 56.1, ¶ 7] and that the *New York Post* credited Mantel for his work.  [Def. 56.1, ¶ 8].  So Defendants' argument that no market existed for the Subject Photograph is directly contradicted by Defendants' own admissions.

28

Defendants' assertion that Mantel hasn't "come forward with proof of the market for his work" is objectively false.  In addition to the undisputed evidence that the Subject Photograph was published by the *New York Post* and *Daily News* [Def. 56.1, ¶ 2], Mantel has declared to the Court under the penalty of perjury that he licensed the Subject Photograph to the *New York Post* [Dkt. # 66, Mantel Declr. ¶ 6] and *Daily News* [*Id.* at ¶ 9].  Defendants have failed to produce any evidence to rebut Mantel's sworn testimony. The fact that the record does not contain evidence of a written licensing agreement is irrelevant because copyright law does not require non-exclusive licenses to be in writing. *See Keane Dealer Servs., Inc. v. Harts,* 968 F.Supp. 944, 947 (S.D.N.Y.1997) ("a nonexclusive license may be granted orally, or may even be implied from conduct.").

Furthermore, Defendants have failed to refute the presumption of market harm prescribed by the U.S. Supreme Court in *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 450-51 (1984).  While Defendants are correct that *Sony's* presumption of market harm does not apply to cases involving parody which is "something beyond mere duplication for commercial purposes," *Campbell*, 510 U.S. at 584, 591, the presumption of harm continues to apply in cases such as this where Defendants' conduct involves wholesale duplication of the original work for profit.[10]

Because Defendants have admitted that they are for-profit entities [Def. 56.1, ¶¶ 14, 21, 28, 35, 42, 49, 56, 63, 70, 77, 84] who utilized advertisements [Def. 56.1, ¶¶ 19, 26, 33, 40, 54, 61, 68, 75, 82] to commercially exploit identical full-scale reproductions

---

[10] In any event, Plaintiff is not required to show actual damages to prevail on the fourth factor.  *Psihoyos*, 1998 WL 336655 at *4-5 (finding that plaintiff-photographer was not required to show that he had experienced actual loss due to the defendant's secondary use).

of the Subject Photograph [Dkt # 66, Mantel Declr., Ex. F-O; Dkt. #68, Charlier Declr., Ex. D at 0:11-17],[11] *Sony*'s presumption of market harm applies.

Finally, Defendants' "alternative" argument that their Fair Use defense cannot be decided on summary judgment highlights the objective unreasonableness of their entire cross-motion. [Def. Memo, 30 of 34]  The evidence on the record is sufficient to decide the question.  Moreover, Defendants have failed to cite to any facts in dispute which would preclude the Court from dismissing their fair use defense as a matter of law. *Harper & Row*, 471 U.S. at 560 (the court "may conclude as a matter of law that the challenged use does not qualify as a fair use of the copyrighted work.").  Accordingly, as all four factors weigh against fair use, this defense should be dismissed.

**POINT IV:**    **DEFENDANTS HAVE ABANDONED THEIR REMAINING DEFENSES TO LIABILITY FOR COPYRIGHT INFRINGEMENT**

In Point III of Plaintiff's principal brief, Mantel argues that Defendants' first, third, fourth and fifth affirmative defenses should be dismissed. [Dkt. #62, pp. 30-33] Defendants have failed to address any of these arguments in their opposition and have therefore abandoned their defenses.  *See, e.g.*, *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("a court may, when appropriate, infer from a party's partial opposition [to a motion for summary judgment] that relevant claims or defenses that are not defended have been abandoned."); *Avillan v. Donahoe*, No. 13-CV-509(PAE), 2015 WL 728169, at *7 (S.D.N.Y. Feb. 19, 2015) ("Where a party fails to raise an argument in his opposition to summary judgment, that argument has been waived.").

---

[11] *See also* Gannett [Def. 56.1, ¶ 18] ("The Video contains an excerpt from the *New York Post* article dated May 8, 2016, which displays . . . the Subject Photograph . . ."); Hearst Stations [*Id.* at. ¶ 25] (same); Hearst Newspapers [*Id.* at ¶ 32] (same); Toshiba [*Id.* at ¶ 39] (same); Lenova [*Id.* at ¶ 46] (same); Gannett Satellite [*Id.* at ¶ 53] (same); Verizon [*Id.* at ¶ 60] (Same); Tegna [*Id.* at ¶ 67] (same); Microsoft [*Id.* at ¶ 74] (same); AOL [*Id.* at ¶ 81]; *see also* Def. 56.1, ¶¶ 95-97.

**POINT V:**     **THE NON-ZAZOOM DEFENDANTS ARE TO BE HELD**
**STRICTLY LIABLE EVEN THOUGH THEY DID NOT CREATE**
**THE ZAZOOM VIDEO**

"Copyright infringement is a strict liability offense in the sense that a plaintiff is

not required to prove unlawful intent or culpability."  *EMI Christian Music Group, Inc. v.*

*MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016) (citing *Cartoon Network LP, LLLP v.*

*CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008); *see also Fitzgerald Publ'g. Co. v.*

*Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir.1986) ("intent or knowledge is not an

element of infringement.")

Here, the record shows that Defendant Zazoom created the video which contains

the infringing content and then distributed it to its co-defendants.  [Def. 56.1 ¶¶ 95, 96,

98].  There is no dispute that Zazoom's co-defendants displayed an exact reproduction of

the Subject Photograph of their respective websites.[12]  Accordingly, regardless of their

intent or knowledge of Zazoom's initial infringement, the non-Zazoom Defendants must

be held liable for exploiting Mantel's work for profit without his authorization.

**POINT VI:**     **PLAINTIFF'S § 1202 CLAIM SHOULD BE SUSTAINED**

Defendants argue that summary dismissal of the DMCA § 1202(b) claim is

warranted because "Mantel lacks any evidence to show that Defendants removed the

CMI in question, or did so with the requisite intent."  [Def. Memo, p. 31 of 34].  As

demonstrated below, the record shows otherwise.

To prove of a claim for removal of copyright management information ("CMI")

under § 1202(b), Mantel must show that (i) the Photograph contained CMI; (ii)

---

[12] Gannett [Def. 56.1, ¶ 18] ("The Video contains an excerpt from the *New York Post* article dated May 8, 2016, which displays . . . the Subject Photograph . . ."); Hearst Stations [*Id.* at. ¶ 25] (same); Hearst Newspapers [*Id.* at ¶ 32] (same); Toshiba [*Id.* at ¶ 39] (same); Lenova [*Id.* at ¶ 46] (same); Gannett Satellite [*Id.* at ¶ 53] (same); Verizon [*Id.* at ¶ 60] (Same); Tegna [*Id.* at ¶ 67] (same); Microsoft [*Id.* at ¶ 74] (same); AOL [*Id.* at ¶ 81]; *see also* Def. 56.1, ¶¶ 95-97.

Defendants either removed or altered of the CMI, or distributed the Photograph knowing

that such CMI had been removed or altered; and (iii) Defendants acted with the intent to

"induce, enable, facilitate, or conceal" copyright infringement.  *See Banxcorp v. Costco*

*Wholesale Corp.*, 723 F. Supp. 2d 596, 609-610 (S.D.N.Y. 2010).

## A.    DEFENDANTS CONCEDE THE FIRST ELEMENT OF THE 1202 CLAIM

Defendants "do not dispute that a 'gutter credit' – a photographer's name placed

beside an image – can constitute CMI within the meaning of the DMCA."  [Def. Memo,

31 of 34, fn. 14].  Accordingly, there is no dispute that Mantel has satisfied the first

element of the DMCA claim.

## B.    EVIDENCE OF ZAZOOM'S REMOVAL OF MANTEL'S CMI – AND ZAZOOM'S KNOWLEDGE OF THE REMOVAL - IS CLEAR ON THE FACE OF THE VIDEO

With respect to the second element of the DMCA claim, the Video proffered by

Defendants makes clear that: (1) Zazoom removed the CMI from the Subject Photograph

appearing for six seconds at 0:11-17 of the Video; and (2) knew the CMI had been

removed because the Subject Photograph appears a second time at 0:40 of the Video

which does, in fact, contain the CMI (by virtue of a screenshot of the *New York Post*

article) [Dkt. #68, Chalier Declr., Ex. D]

Throughout their submission, Defendants consistently mislead the Court by

asserting that the screenshot of the *New York Post* article - which appears for just one

second at 0:40 of the Zazoom Video - is the only use made of Mantel's photograph.

[Def. Memo at p. 25 of 34, fn. 7; p. 32 of 34; Def. 56. 1 at ¶¶ 18, 25, 32, 39, 46, 53, 60,

67, 74, 81]  However, as the Court can plainly see, the Subject Photograph first appears

as the lead still image in the Zazoom Video for a full six seconds at 0:11-17. [Dkt. #68,

Ex. D to Charlier Decl.]  This full-scale, full-color reproduction of the image (separate and apart from the *New York Post* article) does NOT contain an attribution to Mantel.

Instead, the Video only credits the "New York Post."  As pictured below in the far right corner of the Zazoom Video, it cannot be disputed that Zazoom added the *New York Post* credit while simultaneously removing Mantel's credit.



Not only did Zazoom remove the CMI from the Subject Photograph appearing at 0:11-17 of the Video, but it <u>knew</u> that the CMI was removed because, as Defendants assert, the CMI appears later in the same Video at 0:40.  Therefore, based on the evidence on the record, a reasonable jury could find that Zazoom both removed the CMI and distributed the Subject Photograph knowing that such CMI had been removed.

**C.    A TRIABLE ISSUE OF FACT EXISTS AS TO WHETHER ZAZOOM ACTED WITH THE INTENT TO INDUCE, ENABLE, OR FACILITATE COPYRIGHT INFRINGEMENT**

Defendants argue that Plaintiff has not provided direct evidence that Zazoom acted with the requisite intent to induce, enable or facilitate infringement.  [Def. Memo, p. 33 of 34].  Of course, "whenever state of mind is at issue, direct proof of one's specific

wrongful intent is rarely available and so recourse to circumstantial evidence is most

often necessary." *Friedman v. Live Nation*, 833 F.3d 1180, 1189 (9th Cir. 2016)

(sustaining DMCA claim under section 1202 on grounds that a reasonable jury could

infer from circumstantial evidence that Live Nation, who was sophisticated about

copyright law, knew about the removal of CMI when it distributed photographs) (internal

quotations and citations omitted).

Here, the circumstantial evidence on record supports a strong inference that

Zazoom acted with intent to enable or facilitate infringement.  It is undisputed that

Zazoom is a creator, producer and multi-platform distributor of video intended for

internet and mobile-web audiences.  [Def. 56.1, ¶ 88]  Zazoom produces video content

under a number of different brands, including Buzz60, Veuer and TPSY [*id.,* at ¶ 89].

Zazoom's videos cover a wide array of topics such as news, current events and politics,

health, fashion, "DIY" projects, entertainment news, and human-interest stories.  [*id.* at ¶

90]  Zazoom distributes its video content on YouTube and via a network of partner-

operated websites.  [*id.* at ¶ 91]  Each of the other defendants in this action own or

operate a website that is part of Zazoom's partner network. [*id.* at ¶ 92]

Given the wide-ranging breadth and depth of Zazoom's involvement in exploiting

copyrighted materials (including photographs) on the internet via some of the largest

corporate media companies on Earth (i.e. AOL, Microsoft), a strong inference can be

drawn that Zazoom is sophisticated about copyright law and licensing procedures.  *See*

*Friedman*, 833 F.3d at 1188 ("a reasonable jury could certainly conclude that Live Nation

had knowledge that photographs are often copyrighted").[13]

---

[13] Also, Zazoom has been sued for copyright infringement previous to the filing of this lawsuit. *See Devocean Jewelry LLC v. Zazoom, LLC*, 1:16-cv-3881 (PGG) (S.D.N.Y. 2016).

This undisputed evidence of Zazoom's sophistication in the field of exploiting copyrighted material, coupled with its evident knowledge that CMI was removed from the full-scale reproduction of the Subject Photograph at 0:11-17 of the Video, is sufficient to create a triable issue of fact as to whether Zazoom had the intent to enable infringement of Mantel's photograph.  Accordingly, Defendants' motion to dismiss Plaintiff's DMCA claim should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment on liability against Defendants for copyright infringement should be GRANTED and Defendants' cross-motion for summary judgment on Counts I and II should be DENIED.

Respectfully Submitted,

LIEBOWITZ LAW FIRM PLLC

by: **/richardliebowitz/____**
Richard Liebowitz
Yekaterina Tsyvkin
James H. Freeman
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580

*Counsel for Plaintiff John Mantel*

35